67921. RICKETSON v. BLAIR.

CARLEY, Judge.

The minor appellant-plaintiff underwent surgery which was performed by Dr. Jennings. Appellee-defendant Dr. Blair was the anesthesiologist for this operation. After the surgery, appellant experienced a series of seizures and, since that time, has exhibited symptoms indicative of neurological damage. Appellant instituted the underlying damage suit by filing a complaint which alleged that appellant had suffered brain damage as a result of appellee's negligent administration of anesthesia during the surgery. Appellee answered, denying the material allegations of the complaint.

Pursuant to notice given by appellee's attorney, the deposition of Dr. Jennings was taken. During the deposition, Dr. Jennings gave testimony which was essentially exculpatory of appellee. At no point during the deposition did appellee question Dr. Jennings' own surgical performance as a possible cause of appellant's asserted neurological condition. Likewise, appellant posed no such questions to Dr. Jennings during the deposition.

On May 11, 1983, Dr. Jennings was served with a subpoena to appear as a witness at the trial, which was scheduled for the next week. The issuance of the subpoena had been obtained by appellant's counsel. On May 13, 1983, Dr. Jennings called the trial court in chambers and asked to be excused from appearing as a witness. According to the trial court, Dr. Jennings stated that his appearance as a witness in the case would be disruptive of his first scheduled vacation in two or three years. After determining from Dr. Jennings that he "had been interviewed by several attorneys" and that his deposition "contained all the information that he had knowledge of with respect to

this incident," the trial court granted Dr. Jennings' request to be excused. That afternoon the trial court phoned appellant's counsel with the information that Dr. Jennings had been excused from appearing at the upcoming trial.

On May 16, 1983, appellant filed a motion for a continuance which was predicated upon the unavailability of Dr. Jennings to appear as a witness. Appellant's motion denominated Dr. Jennings as a material witness, "in that he was an eyewitness to the administration of the anesthesia." The motion further recited that it was expected that Dr. Jennings would testify to his personal observations of appellant's physical condition during and after the surgery. In addition, the motion stated that Dr. Jennings' "credibility and essential parts of his testimony is [sic] a question for the jury to properly consider and one which they are unable to effectively consider without observing this witness." Appellant's motion for a continuance was denied, based upon the trial court's determination that "it would not be in the best interest of the public in general and to Dr. Jennings, to this court, to the Medical Society, and to the Bar Association to continue this case."

During the course of the ensuing trial, Dr. Jennings' surgical performance became an issue in the case. Appellee gave direct testimony to the effect that, during the surgery, Dr. Jennings had authorized the administration of "500 milligrams of Kantrex," which was then characterized by appellee as "seven to ten times the dose for a child." With regard to the drug Kantrex, appellee further testified that "[m]ost antibiotics, particularly this one, are muscle relaxants in themselves. They have muscle-relaxant properties, like curare, although not to the same degree. But they do act at the same place, the neuromuscular junction, and they can cause muscle relaxation. . . ." Appellee also called an expert medical witness who testified "that antibiotics — while antibiotics by themselves don't cause muscle paralysis, if you combine it with something else, like immaturity, like halothane, like an anesthetic, they may well all act together accumulatively to make breathing rather difficult, particularly in such a small child at this point." Appellee then introduced Dr. Jennings' deposition which, as noted above, was essentially exculpatory of appellee's performance during the surgery.

The case was submitted to the jury and a verdict was returned for appellee. Appellant appeals from the judgment entered on the verdict, enumerating as error the denial of his motion for continuance.

OCGA § 9-10-160 sets forth the showings which must be made to secure a continuance because of the absence of a witness. Of those numerous requirements, only one is at issue in the instant case. The sole question is whether appellant sufficiently demonstrated that Dr. Jennings' testimony was "material" to the case.

Based upon the allegations which underlay the instant medical malpractice suit, it is clear that Dr. Jennings, as the surgeon who had actually performed the operation during which appellant had been anesthesized by appellee, was a "material" witness. A "material witness" is defined as "[a] person who can give testimony no one else, or at least very few, can give. . . . He may be . . . an eyewitness." Black's Law Dictionary (5th ed. 1979). Dr. Jennings was uniquely qualified to give "material evidence" in this malpractice case, such evidence being defined as "that which 'is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case.' [Cit.]" *Hill v. State*, 159 Ga. App. 489, 491 (283 SE2d 703) (1981).

Accordingly, the instant case comes down to the issue of whether a party who has subpoenaed a material witness is entitled to a continuance when that witness is absent as the sole result of the trial court's sua sponte decision to excuse him. Although we find no cases which clearly involve the sua sponte excusal of a material witness, we will assume without deciding that, under certain circumstances, a trial court may so act and quash the subpoena of such a witness. See generally *Shepherd v. Shepherd*, 231 Ga. 257, 258 (1) (200 SE2d 893) (1973); *Piper v. Piper*, 139 Ga. App. 19 (227 SE2d 842) (1976); *Park v. State*, 154 Ga. App. 348 (268 SE2d 401) (1980). Thus, we will assume that the trial court's initial act of granting Dr. Jennings' telephone request to be excused was within the trial court's discretion. However, we do not consider the *Shepherd*, *Piper* or *Park* decisions to be dispositive of the issue presented here. Those cases deal with a trial court's discretion to *quash a subpoena*. The instant case concerns a trial court's refusal to *grant a continuance* to a party who was given no opportunity to oppose the excusal of a subpoenaed material witness and who then insists upon his right to have the witness appear at trial.

The fact that Dr. Jennings had previously been deposed in the case is the only basis which arguably supports the trial court's determination that Dr. Jennings' actual presence was not "material" to the case and that a continuance due to his absence was not necessary. Both Dr. Jennings' vacation schedule and the "best interests" of the public, the trial court, the medical society and the bar association were perhaps legitimate factors upon which to base a sua sponte decision to excuse Dr. Jennings from appearing as a witness. *Shepherd*, supra. However, since Dr. Jennings had been subpoenaed by appellant to appear as a witness but had then been excused without appellant's prior notification, the determinative factor was whether requiring that the trial proceed in the absence of Dr. Jennings was detrimental to appellant. "At the request of any party, subpoenas for attendance at a hearing or trial *shall be issued* by the clerk of the

court in which the hearing or trial is held." (Emphasis supplied.) OCGA § 24-10-21. "[A]ny person not privileged having knowledge of issues being tried *should be made available* to the parties as witnesses." (Emphasis supplied.) *Logan v. Chatham County*, 113 Ga. App. 491, 492 (148 SE2d 471) (1966).

There is authority for the proposition that a continuance is not erroneously denied if the absent witness would give merely "cumulative" testimony. See generally *Varnadoe v. State*, 67 Ga. 768 (1881). However, such cases appear to hold that an absent witness' testimony is "cumulative" when there are *other witnesses* present and prepared to give essentially the same testimony. We find no cases wherein, all other requirements of OCGA § 9-10-160 having been met, a subpoenaed witness' deposition serves to render the live testimony he might otherwise give at trial "cumulative," and thus authorizing the denial of a continuance in the event of his absence. However, even if the "cumulative" label could be attached to such live testimony as might otherwise be given by a witness who has been formerly deposed, prior decisions do *not* uniformly hold that the denial of a continuance is *always* the appropriate response when the showing is that an absent witness will give "cumulative" testimony. "It is true, that [the] testimony might have been only 'cumulative,' but a case may be such, that cumulative evidence, will be of the utmost value in it. . . . *A motion for a continuance, put on the ground of 'the absence of a witness,' ought to be granted if his testimony will be 'material'*. . . . There is no exception of the case in which the testimony, whilst being 'material,' is only 'cumulative.' " (Emphasis supplied.) *Reid v. State*, 23 Ga. 190, 192 (1857).

Thus, if the "cumulative" testimony of the absent witness is "material," a motion for a continuance should nevertheless be granted. "The credibility of a witness being for the jury, the court can not select a party's witness for him. . . . Either [the absent witness'] manner upon the stand, his opportunity for knowing the facts, the probability of his statement, or its very apparent sincerity, might carry conviction to the minds of the jury. . . ." *Hobbs v. State*, 8 Ga. App. 53, 57 (68 SE 515) (1910). Also, the denial of a continuance based merely upon the existence of the deposition of an absent subpoenaed witness can deprive a party of the opportunity to meet such issues as may have arisen in the case subsequent to the deposition, as was the apparent case with the issuance of Dr. Jennings' surgical performance. All things considered, it is ultimately more expeditious to allow the parties to select their own witnesses and, in the event a material witness is absent without fault of the party who subpoenaed him, to grant a continuance of the case until such time as that party can present his case as he sees fit.

As noted above, Dr. Jennings was certainly a "material" witness

in that he could give eyewitness expert medical testimony in this malpractice case. For whatever reasons, it was determined that Dr. Jennings was a witness whose presence at trial was important to appellant's case, and he was accordingly subpoenaed. After Dr. Jennings was excused by the trial court acting sua sponte, appellant reasserted the importance that he ascribed to having Dr. Jennings present to testify. The trial court's determination that the existence of a prior deposition rendered the presence of the witness superfluous erroneously denied appellant the right to present his case to the jury in the manner in which he chose. "[T]he court can not select a party's witness for him." *Hobbs v. State*, supra at 57. In view of the subsequent introduction of evidence at trial which was exculpatory of appellee and inculpatory of the absent Dr. Jennings, we cannot say that the initial error in refusing to continue the case was harmless. Accordingly, the judgment is reversed and the case remanded for a new trial.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 20, 1984 —
REHEARING DENIED JULY 24, 1984 — 

*Robert H. Baer, Lewis M. Groover, Jr.,* for appellant.
*William P. Franklin, Jr., I. Gregory Hodges,* for appellee.