985 So.2d 37 (2008)
The STATE of Florida, Appellant,
v.
Mary BASTOS and Ralph Vlad, Appellees.
No. 3D06-1647.
District Court of Appeal of Florida, Third District.
June 11, 2008.
*38 Bill McCollum, Attorney General, and Paulette R. Taylor, Timothy R.M. Thomas, and Patrick F. Trese, Assistant Attorneys General, for appellant.
Bennett H. Brummer, Public Defender, and John Eddy Morrison, Assistant Public Defender, for Appellee Ralph Vlad and Hersch & Talisman, and Richard Hersch, for Appellee Mary Bastos.
Greenberg, Traurig, and Edward G. Guedes, for amicus curiae, CMI, Inc.
Before COPE and GREEN, JJ., and SCHWARTZ, Senior Judge.
COPE, J.
This is a State appeal of a non-final order certified by the county court as being of great public importance. See Fla. R.App. P. 9.030(b)(4)(B), 9.140(c)(2); State v. Ratner, 948 So.2d 700, 704 (Fla.2007).
The underlying proceedings are the prosecution of Mary Bastos and Ralph Vlad ("the defendants") for driving under the influence of alcohol ("DUI"). The county court ruled that the defendants are entitled to have testimony about, and production of, the source code for the Intoxilyzer 5000, which is the breathalyzer used in both cases.
The proposed witnesses are two employees of CMI, Inc., in Owensboro, Kentucky. CMI is the manufacturer of the Intoxilyzer 5000, and is in possession of the source code.
The county court issued a certificate for testimony and production of documents under chapter 942, Florida Statutes (2005), which is the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings ("Uniform Law"). Id. § 942.06.
The county court certified two questions to be of great public importance. The first certified question is:
Can chapter 942, the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, be used to compel production of documents/source codes in light of General Motors, Corp. v. State, 357 So.2d 1045 (Fla. 3d DCA 1978)?
We rephrase the first question to conform to the facts of the case:
Can chapter 942, the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, be used to compel production of documents/source codes in light of General Motors, Corp. v. State, 357 So.2d 1045 (Fla. 3d DCA 1978), where the request is for testimony and production of documents?
The second certified question is:
If so, is the source code for the Intoxilyzer 5000 "material" within the meaning of § 942.03?
The State has appealed. We accepted jurisdiction. Fla. R.App. P. 9.030(b)(4)(b).

I.
The first certified question asks whether the Uniform Law can be used to compel the production of documents/source codes, where the request is for testimony and production of documents.
The Uniform Law contains a procedure by which a court of this state may obtain the attendance of a material witness from another state in a pending prosecution or *39 grand jury investigation. § 942.03, Fla. Stat. (2005). The requesting court must certify that the witness is a material witness and specify the number of days the witness will be required. Id. This triggers a procedure in the recipient state for compelling the attendance of the witness. Id. § 942.02.
In this case, the county court issued its certificate stating that:
Mr. William Schofield or Mr. Glenn Gilbreath, employees of CMI, Inc., . . . Owensboro, Kentucky, are material witnesses in these case[s] and [the court] respectfully requests that honorable court [the Kentucky Sixth Circuit Court] to issue a summons . . . for purposes of presenting testimony at deposition and for purposes of providing the source code and other information described above.
The order also requests the presence of Mr. Schofield or Mr. Gilbreath at trial.
Both sides agree that the Uniform Law may be utilized to compel the attendance of out-of-state witnesses. The State argues, however, that a prior decision of this Court prohibits the use of the Uniform Law to obtain production of documents. See Gen. Motors Corp. v. State, 357 So.2d 1045 (Fla. 3d DCA 1978). The State has misinterpreted that case.
In General Motors, the state attorney served an investigatory subpoena duces tecum on General Motor's Florida resident agent. Id. at 1046. The subpoena was for documents only. Id. at 1047. The trial court denied General Motors' motion to quash the subpoena, and this Court denied General Motors' petition for a writ of certiorari.
This Court's opinion in General Motors must be read carefully. It made three points: (1) "There is presently a conflict of opinion regarding the applicability of the Uniform Law to a request for production of documents ancillary to a request for testimony." Id. at 1047. (2) "The Uniform Law does not, as it presently reads, apply to requests solely for the production of documents." Id. (3) "[T]he Uniform Law applies only to witnesses located outside of Florida." Id.
Our Court then denied certiorari for reasons (2) and (3), but not (1). This Court said: "Since the instant subpoena duces tecum requests only the production of documents and since it is directed to a foreign corporation authorized to do, registered to do and doing business in Florida, the Uniform Law is inapplicable." Id. (emphasis added).[1]
As to proposition (1)  whether the Uniform Law applies to a request for production of documents ancillary to testimony  our Court expressed no opinion. See Jay M. Zitter, Annotation, Availability under Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings of Subpoena Duces Tecum, 7 A.L.R.4th 836, § 1 ("Recognizing the existence of a conflict of authority regarding the applicability of the Uniform Act to a request for the production of documents ancillary to a request for testimony, the court [General Motors] ruled that the Uniform Act does not apply where there is a mere request for documents without an accompanying subpoena of a witness.").
The General Motors case left open the question now before us: The application of the Uniform Law to request for testimony *40 and production of documents. We now consider that question.
Florida has adopted the Uniform law, including that portion of the Uniform Law which calls for uniformity of interpretation by the adopting states. § 942.05, Fla. Stat. (2005). Therefore we are to follow the prevailing rule of the adopting states.
Writing in 1978, this Court in General Motors said that there was a conflict of opinion regarding a request for documents ancillary to testimony. For the negative side of the conflict, this Court cited In the matter of Grothe, 59 Ill.App.2d 1, 208 N.E.2d 581 (1965). General Motors, 357 So.2d at 1047. However, "after the decision in the Grothe case the Legislature of Illinois amended the definition of `summons' in its enactment of the Uniform Act so as to include subpoenas duces tecum, thus bringing Illinois law in line with New Jersey and New York in this respect." In re Grand Jury, 8 Mass.App.Ct. 760, 397 N.E.2d 686, 690-91 (1979).
Writing more recently, the Fourth District Court of Appeal said, "Courts of other states seem uniformly to hold that the Act permits issuance of subpoenas duces tecum." Delit v. State, 583 So.2d 1083, 1085 (Fla. 4th DCA 1991). We agree. See Jay M. Zitter, supra § 1.
We align ourselves with the prevailing rule and answer the first certified question "yes." The Uniform Law authorizes a request for testimony accompanied by a request for production of documents.[2]

II.
The second certified question asks. "[I]s the source code for the Intoxilyzer 5000 `material' within the meaning of § 942.03?"

A.
The county court summarized the underlying facts of the case:
1. The State of Florida is prosecuting Mary Bastos and Ralph Vlad on a criminal charge of driving under the influence contrary to section 316.193, Florida Statutes. As part of the investigation of these cases, the defendants submitted to a breath test pursuant to Florida's implied consent laws. See § 316.1932, Fla. Stat. (2005).
2. The law enforcement officers tested their breaths using Intoxilyzer 5000 breath testing machines, manufactured by CMI, Inc. The Florida Department of Law Enforcement's (FDLE) regulations specify that all breath testing must be done on one of CMI's breath testing machines, either the Intoxilyzer 5000 or the Intoxilyzer 8000. See Fla. Admins. Code R. 11D-8.003 (2005).
3. The Intoxilyzer 5000 machine registered that defendant Bastos had a breath alcohol level readings of .126 and .123. The report on Vlad was that he had a breath alcohol level reading of .066 and .071. The legal limit in Florida is .08. See § 316.193(1)(b), Fla. Stat. (2005). These reports, in the form breath cards, are admissible in evidence under a simplified procedure requiring the state attorney to prove only that the machines were operated and maintained in accordance with regulations promulgated by the FDLE. See §§ 316.1932(1) & 316.1934(2), Fla. Stat. (2005); see also State v. Bender, 382 So.2d 697 (Fla. 1980); Robertson v. State, 604 So.2d 783, 789 (Fla.1992).
4. The Florida prosecutor plans to introduce these reports at trial. Florida *41 law allows convictions for driving under the influence if either a person's breath alcohol content is above the legal limit or a person's normal faculties are impaired. See § 316.193(1)(a) & (c), Fla. Stat. (2005). As to the Bastos case, a breath alcohol level reading from the Intoxilyzer 5000 could be both evidence of an illegal breath alcohol level, and triggers a presumption that the person's normal faculties are impaired. See §§ 316.193(1)(c) & 316.1934(2)(c), Fla. Stat. (2005). As to the Vlad case, a breath alcohol level from the Intoxilyzer 5000 could be used as evidence that his normal faculties are impaired. See § 316.1934(2)(b), Fla. Stat. (2005).
The defendants sought the source code and certain related documentation regarding the Intoxilyzer 5000.[3] They moved for certification under the Uniform Law so that they could obtain testimony and the documents from the CMI witnesses. Similar motions were filed by DUI defendants in several hundred pending DUI cases.
The county court convened an evidentiary hearing attended by eleven county court judges, each of whom had pending requests for certification. Under the agreed procedure, each county court judge would be free to enter his or her own order granting or denying the motion for certification. At the conclusion of the hearing, Judge Edward Newman granted certification under section 942.03, Florida Statutes (2005), and, as already explained, certified two questions of great public importance to this court.

B.
As stated previously, the Uniform Law sets forth the procedure to compel a witness from another state to appear and testify in this state. § 942.03(1), Fla. Stat. (2005). To invoke this procedure, a judge of this state must make certain findings, one of which is that the out-of-state witness "is a material witness in a prosecution pending a court of record in this state." Id.
The statute does not define "material witness." Under a dictionary definition, a material witness is "[a] witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about these matters." Black's Law Dictionary 1634 (8th ed.2004). As stated in the trial court's order: "`Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case.' McCormick on Evidence, § 185, at 541 (Edward W. Cleary ed., Lawyer's Ed.1984)."
At the evidentiary hearing, the defense and the State presented expert testimony. To utilize the Intoxilyzer 5000, a subject blows into a tube. The breath sample is captured in a chamber and the machine directs infrared light through the breath sample. The purpose is to detect ethanol in the breath. However, the machine is designed to examine only a portion of the infrared spectrum. For that reason, it is unable to produce a "fingerprint" identification of ethanol to the exclusion of all other compounds. Instead, the machine is known to produce false positives. Examples of this would be compounds produced *42 by the body as a result of the Adkins diet or diabetes. Exposure (usually occupational exposure) to certain paint thinners, lacquers, varnishes, and industrial cleaning solvents can also produce false positives. Where the false positives occur, they can indicate that the subject has consumed alcohol when he or she has consumed none, or if the subject has consumed alcohol, the "false positive" compound can produce an exaggerated reading. The State did not dispute that the Intoxilyzer 5000 can produce false positives under the circumstances stated.
The "false positive" problem is inherent in the design of the machine. The Intoxilyzer 5000 does not preserve the breath sample, so it is not possible to submit the sample for more sophisticated testing after the fact. One of the defense experts, Dr. Stefan Rose, opined that the machine is satisfactory as a screening test, but should not be used as a confirmatory test.
The trial court concluded that the information sought by the defendants was material. The court stated its rationale:
5. . . . While the defendant has hired experts to physically inspect the Intoxilyzer 5000 machine, that physical inspection has not yielded complete information about how the Intoxilyzer 5000 machine makes its calculations because the final calculations and reports, including notations of mouth alcohol or interferents (other chemicals with similar infrared absorption patterns in the selected frequencies of the Intoxilyzer 5000), are performed by, and a product of, the CPU (central processing unit), a Z80 microprocessor.
. . . .
7. As a practical matter the only way the Intoxilyzer 5000 software can be intelligible is through disclos[ur]e of the source code. Therefore, this Court finds that the source code is material for the defendants to have a full understanding of the machine that reported the defendants' breath alcohol levels.
8. The defendants have a constitutional right to investigate their case and of access to evidence. See Crane v. Kentucky, 476 U.S. 683, 690-91 [106 S.Ct. 2142, 90 L.Ed.2d 636] (1986); California v. Trombetta, 467 U.S. 479, 485 [104 S.Ct. 2528, 81 L.Ed.2d 413] (1984); Washington v. Texas, 388 U.S. 14, 19 [87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967); see also Rock v. Arkansas, 483 U.S. 44, 51-53 [107 S.Ct. 2704, 97 L.Ed.2d 37] (1987); Taylor v. Illinois, 484 U.S. 400, 408-09 [108 S.Ct. 646, 98 L.Ed.2d 798] (1988); Chambers v. Mississippi, 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973). In these cases, credible testimony explains that the state has substituted the results of the Intoxilyzer 5000 for the analysis of a forensic chemist. Although defendants cannot cross-examine a machine as they could a chemist, this constitutional right to investigate the evidence against them gives the defendants a right to understand how the machine calculates and reports the breath alcohol reading, how and when the machines does or does not filter out or report the presence of other molecularly similar substances in the breath, and how and when the machine makes all of its other determinations and reports such as mouth alcohol or radio interference.
After careful consideration, we conclude that the present record does not support the conclusion that the proposed testimony and documents are "material" for purposes of the Uniform Law. The defendants certainly are entitled to investigate their case. They have retained two experts, Dr. Rose and Dr. Harley Myler, who are highly knowledgeable about the Intoxilyzer 5000. The defendants are entitled to bring forth *43 testimony, or conduct testing, to demonstrate that interferents yield false positives or skew the machine's readings.
However, we cannot accept the proposition that simply because a piece of testing equipment is used in a criminal case, it follows that the source code for its computer must be turned over. There would need to be a particularized showing demonstrating that observed discrepancies in the operation of the machine necessitate access to the source code. We are unable to see that any such evidence was brought forth in the evidentiary hearing below.
The testimony in the trial court made clear that the problem of false positives is inherent in the design of the infrared portion of the machine. In the absence of a more particularized showing, we are unable to conclude that the materiality standard was met. We therefore answer the second question "no."
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] Arguably, the actual holding is (3), and (2) is dictum, but we need not consider that possibility here.
[2] Indeed, in Mastrapa v. So. Fla. Money Laundering Strike Force, 928 So.2d 421 (Fla. 3d DCA 2006), we assumed, without discussion, that the Uniform Law authorized issuance of a subpoena duces tecum to a records custodian.
[3] The requested documents were:

(a) A copy of the software (assembly level or higher language) used to create the machine code that resides in the Intoxilyzer 5000 model 66 that is currently the approved software version as required by rule 11D-8.003(2) under chapter 11D of the Implied Consent Program.
(b) The compiler used to translate the software requested in item (a).
(c) The source code necessary to allow reading of the software.