## S10G1355. DAVENPORT v. THE STATE.
### (711 SE2d 699)

BENHAM, Justice.

After the trial court denied appellant Emily Davenport's motion, filed under the Uniform Act to Secure the Attendance of Witnesses from Without the State, OCGA § 24-10-90 et seq. ("the Uniform Act"), to obtain evidence purportedly possessed by a specified person in Kentucky, she was convicted in a bench trial of driving under the influence of alcohol per se based on evidence from the Intoxilyzer 5000 that her blood alcohol content was 0.156 grams, over the legal limit of 0.08 grams. OCGA § 40-6-391 (a) (5). The evidence Davenport unsuccessfully sought was the source code of the Intoxilyzer 5000, which is manufactured by the Kentucky corporation which employed the individual Davenport sought to have summoned to Georgia. On appeal, Davenport cited the trial court's refusal to issue an order requesting issuance of a summons to the Kentucky resident.[1] The Court of Appeals ruled that the trial court had not abused its discretion in declining to issue the order because Davenport had not carried her burden of showing that the out-of-state person was "a necessary and material witness to the case." *Davenport v. State,* 303 Ga. App. 401, 402 (693 SE2d 510) (2010). We granted Davenport's petition for a writ of certiorari to the Court of Appeals, asking the parties whether the Court of Appeals had erred in finding that Davenport had failed to make a showing sufficient under the Uniform Act.

The Sixth Amendment to the U. S. Constitution[2] and Article I, Sec. I, Par. XIV of the Georgia Constitution guarantee a Georgia criminal defendant the right to compulsory process for obtaining witnesses in his defense. "[C]riminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie,*

---

[1] Davenport did not contest on appeal the trial court's ruling that the source code was not discoverable from the State since it was established that the State was not in possession, custody or control of the source code. *Hills v. State,* 291 Ga. App. 873 (663 SE2d 265) (2008).

[2] The right to compulsory process guaranteed by the Sixth Amendment is applicable to the states through the Fourteenth Amendment. *Washington v. Texas,* 388 U. S. 14 (87 SC 1920, 18 LE2d 1019) (1967).

480 U. S. 39, 56 (107 SC 989, 94 LE2d 40) (1987). A Georgia court has authority to compel the attendance at a Georgia criminal trial of persons anywhere within Georgia (OCGA §§ 24-10-21, 17-7-191); however, process issued by Georgia courts does not have extraterritorial power. See *Hughes v. State*, 228 Ga. 593 (3) (187 SE2d 135) (1972) (Georgia's constitutional provision to a criminal defendant of "compulsory process to obtain the testimony of his own witnesses . . . is of no benefit when the witnesses reside beyond the jurisdiction of the courts of this State."). See also *Pennoyer v. Neff*, 95 U. S. 714, 722 (24 LE 565) (1877), overruled in part by *Shaffer v. Heitner*, 433 U. S. 186, 212, n. 39 (97 SC 2569, 53 LE2d 683) (1977), which states "no State can exercise direct jurisdiction and authority over persons . . . without its territory."

The Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Proceedings, approved by the National Conference of Commissioners on Uniform State Laws in 1931 and amended in 1936, "is intended to provide a means for state courts to compel the attendance of out-of-state witnesses at criminal proceedings." *Availability under Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings of Subpoena Duces Tecum*, 7 ALR4th 836, § 1. Relying on the principles of comity in the absence of unilateral power to compel the appearance of a witness located out of state, the Uniform Act has been enacted by all 50 states. Studnicki and Apol, *Witness Detention and Intimidation: The History and Future of Material Witness Law*, 76 St. John's L. Rev. 483, 532 (2002); Wasserman, *The Subpoena Power: Pennoyer's Last Vestige*, 74 Minn. L. Rev. 37, 88 (1989).

Georgia's version of the Uniform Act, OCGA § 24-10-90 et seq.,[3] is the statutory means by which a witness living in a state other than Georgia can be compelled to attend and testify at a criminal proceeding in Georgia (OCGA § 24-10-94 (a)), and a witness living in Georgia can be compelled to attend and testify at a criminal proceeding in another state. OCGA § 24-10-92. While the statute speaks only to securing the attendance of an out-of-state witness, the scope of the statute has been construed in Georgia and several other states to authorize issuance of a summons that requires the out-of-state witness to bring items or documents with the witness. *Wollesen v. State of Ga.*, 242 Ga. App. 317 (529 SE2d 630) (2000) ("[T]he power to order a witness to travel to a foreign state for the purpose of testifying [in a criminal proceeding] implicitly encompasses the power to order the witness to produce relevant documents."). See

---

[3] With an effective date of March 31, 1976, Georgia's version of the uniform law is one of the more-recently enacted versions of the 1931 uniform act.

*French v. State*, 288 Ga. App. 775 (655 SE2d 224) (2007); *Wyman v. State*, 125 Nev. 46 (217 P3d 572) (2009); *State v. Bastos*, 985 So2d 37 (Fla. 3rd Dist. Ct. App. 2008); *Ex parte Simmons*, 668 So2d 901 (Ala. Crim. App. 1995); *In the Matter of Rhode Island Grand Jury Subpoena*, 414 Mass. 104 (605 NE2d 840) (1993); *In re State of Calif. &c. Grand Jury Investigation*, 298 Md. 243 (469 A2d 452) (1983) later proceeding, 57 Md. App. 804 (421 A2d 1141) (1984); *In the Matter of State of Washington*, 198 NYS2d 897 (10 AD2d 691) (1960); *In the Matter of Saperstein*, 30 NJ 373 (104 A2d 842) (1954).

Because appellant Davenport, a defendant in a case to be tried in Georgia, sought the issuance of a certificate requesting the attendance in Georgia of an out-of-state witness and evidence purportedly in that witness's custody and control, this case falls under OCGA § 24-10-94 (a). When faced with a motion by a litigant in a Georgia criminal proceeding for the attendance of a witness located outside Georgia, a Georgia trial court is required by OCGA § 24-10-94 (a) to determine whether the person sought to be summoned to the Georgia trial "is a material witness in a prosecution pending in a court of record in [Georgia,]" and whether the state in which the out-of-state witness is located has laws "for commanding persons within its borders to attend and testify in criminal prosecutions . . . , in this state[,] . . ."[4] If those criteria are satisfied, the Georgia trial judge "may issue a certificate under . . . seal" that is then presented to a judge of a court of record in the out-of-state county in which the witness is found. Id. Upon presentation of the certificate, the out-of-state judge holds a hearing at which the witness has been ordered to appear, to determine whether to issue a summons directing the witness to attend and testify in the Georgia criminal proceeding. OCGA § 24-10-92 (a); Ky. Rev. Stat. Ann. § 421.240 (1). The summons requiring the out-of-state witness to attend the Georgia criminal proceeding shall be issued by the out-of-state judge if that judge determines that the witness is material and necessary to the Georgia criminal proceeding, that compelling the witness to attend the Georgia proceeding and testify would not cause an undue hardship to the witness, and that Georgia will give the witness protection from arrest and the service of civil or criminal process.

---

[4] When the Uniform Act was enacted in Georgia in 1976, the phrase "in this state" was set off by commas, which resulted in the statute requiring the state in which the material witness was located to have enacted laws providing for commanding persons within its borders to attend and testify in criminal matters in Georgia. In the re-codification of Georgia's Code in 1982, the second comma was omitted. That omission signaled that "in this state" modified the phrase that followed it rather than the phrase that preceded it. Since enactment of the re-codification "was not intended to alter the substantive law in existence on the effective date of [the re-codification]," we apply the law as it was enacted in 1976 by re-installing the comma after "in this state." OCGA § 1-1-2. See *Sheriff v. State*, 277 Ga. 182 (1) (587 SE2d 27) (2003).

OCGA § 24-10-92 (b); Ky. Rev. Stat. Ann. § 421.240 (2).

The trial court in the case before us was presented with the question whether the out-of-state witness was "a material witness in a prosecution pending in a court of record in this state. . . ." OCGA § 24-10-94 (a). The Court of Appeals, citing *Chesser v. State*, 168 Ga. App. 195, 196 (308 SE2d 589) (1983) and *Mafnas v. State*, 149 Ga. App, 286 (1) (254 SE2d 409) (1979), stated that Davenport was required to make a showing that the out-of-state witness was "a necessary and material witness to the case." *Davenport v. State*, supra, 303 Ga. App. at 402. However, whether the witness is "necessary and material" is one of the determinations that must be made under OCGA § 24-10-92 (b) by the judge in the county where the out-of-state witness is located. It is not the statutory scheme to be employed in this case in its current posture; rather, the Georgia trial court evaluates the request under OCGA § 24-10-94 and must determine only whether the out-of-state witness is a "material witness" in the Georgia criminal prosecution and whether it should issue the certificate requesting the out-of-state court to order the out-of-state witness to attend the criminal proceeding in Georgia.

Several appellate decisions, including the decisions in *Chesser v. State* and *Mafnas* cited by the Court of Appeals, state that a Georgia trial court faced with a request for issuance of a certificate "must set out and certify a showing of necessity and materiality for present-ment to a judge [where the out-of-state] witness is found." *Mafnas v. State*, supra, 149 Ga. App. at 287; *Chesser v. State*, supra, 168 Ga. App. at 196 (citing *Mafnas*); *Holowiak v. State*, 308 Ga. App. 887 (709 SE2d 39) (2011) cert. pending, S11C1190 (citing *Davenport*, the case currently before us); *Davenport v. State*, supra, 303 Ga. App. at 402 (citing *Chesser* and *Mafnas*); *Welch v. State*, 207 Ga. App. 27 (8) (427 SE2d 22) (1992) (physical precedent only, citing *Mafnas* and *Chesser*); *Baines v. State*, 201 Ga. App. 354 (5) (411 SE2d 95) (1991) (citing *Mafnas*). But see *Yeary v. State*, 302 Ga. App. 535, 537 (690 SE2d 901) (2010) ("the judge in this state must make certain findings under the Uniform Act, including a finding that the out-of-state witness is a material witness in the prosecution pending in this state"), cert. granted, *Yeary v. State*, 289 Ga. 394 (711 SE2d 694) (2011); *French v. State*, 288 Ga. App. 775, 776 (655 SE2d 224) (2007) (the requesting party must present sufficient facts to enable the court in which the request is made and the out-of-state court in which the witness is located "to determine whether there should be compliance with the request"). We disapprove the Court of Appeals's repeated misreading of the statutory scheme. It is the out-of-state judge who must decide whether the sought-after witness is necessary and material, not the requesting court in Georgia. OCGA § 24-10-92 (b); Ky. Rev. Stat. Ann. § 421.240 (1). The Georgia

trial judge presented with a request for a certificate is charged with deciding whether the sought-after witness is a "material witness." OCGA § 24-10-94 (a).

The question then becomes one of determining what is the appropriate standard by which a Georgia trial court should decide whether an out-of-state witness is a "material witness." While OCGA § 24-10-94 (a) sets out "material witness" as the appropriate standard, neither the Uniform Act nor the Georgia version of the Act defines the term. Each only defines "witness" as "a person whose testimony is desired . . . in a criminal action, prosecution, or proceeding held by the prosecution or the defense. . . ." OCGA § 24-10-91 (4); Sec. 3 of the Uniform Act. Faced with the task of construing the term "material witness" as found in OCGA § 24-10-94 (a), we "look diligently for the intention of the General Assembly" (OCGA § 1-3-1 (a)), applying "the ordinary signification" to all words that are not terms of art or connected to a particular trade. OCGA § 1-3-1 (b). In its enactment of the Uniform Act, the General Assembly gave additional insight with regard to its intent: "This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it. . . ." OCGA § 24-10-97. In light of the legislative statement of intent that Georgia's version of the Uniform Act be construed uniformly with that of the other states, we give great weight to the statutory construction of our sister states where they are well-reasoned and legally sound. See *Delit v. State*, 583 So2d 1083, 1086 (Fla. App. 4th Dist. 1991); *State v. Ivory*, 609 SW2d 217 (Mo. App. 1980) (construing their version of OCGA § 24-10-97).

After recognizing the lack of a definition of "material witness" in its version of the Uniform Act, the Florida Court of Appeals endorsed use of the definition of "material witness" found in Black's Law Dictionary (8th ed. 2004): "a material witness is '(a) witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about these matters.'" *State v. Bastos*, 985 So2d 37, 41 (Fla. 3rd Dist. Ct. App. 2008). The Supreme Court of Nevada, faced with the same question in *Wyman v. State*, 125 Nev. 46 (217 P3d 572, 583) (2009), followed the lead of the Florida appellate court and determined that the Nevada Legislature, in enacting Nevada's version of OCGA § 24-10-94 (a), intended that the term "material" be used according to its ordinary meaning as defined by dictionaries. The Nevada Supreme Court held that "material," as used in Nevada's version of the Uniform Act, connotes "that [which] is logically connected with the facts of consequence or the issues in the case." See also *Ricketson v. Blair*, 171 Ga. App. 714, 716 (320 SE2d 788) (1984) (where the Court of Appeals adopted the definition of "material witness" found in

Black's Law Dictionary (5th ed. 1979) when faced with the task of construing the phrase "a witness whose testimony is material" found in OCGA § 9-10-160).

In light of OCGA § 24-10-97, this Court, as have the Nevada and Florida appellate courts, construes "material witness" as "a witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about these matters." Black's Law Dictionary (8th ed. 2004). Since the proper statute was not applied to this case, the judgment of the Court of Appeals is vacated and the case remanded to that court for proceedings not inconsistent with this opinion.

*Judgment vacated and case remanded with direction. All the Justices concur, except Carley, P. J., and Hines, J., who dissent.*

NAHMIAS, Justice, concurring.

I join fully in the majority opinion and note that it may have two salutary effects. First, in *Lattarulo v. State*, 261 Ga. 124 (401 SE2d 516) (1991), this Court held that the results of breathalyzer tests conducted in accordance with the statutory scheme "may be admitted into evidence without expert testimony regarding the scientific theory behind the operation of the test." Id. at 127. But the Court also said that "[a]n accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction," with such evidence going to the weight of the breathalyzer results. Id. at 126. Under today's decision, defendants seeking to obtain such evidence from another state must still show the Georgia court that the evidence is "material" to their case as required by OCGA § 24-10-94 (a), but they need not make the more demanding showing required by the now-disapproved Court of Appeals' decisions.

Second, by applying the correct "material witness" standard, trial courts may alleviate the due process concerns that may otherwise exist (but are not well presented in this appeal) when the State enacts a statutory scheme in which: (1) evidence usually determinative of the defendant's guilt (e.g., blood alcohol content in a per se DUI prosecution) is tested and reported, not by forensic experts who testify and face cross-examination on the reliability of their methods and the accuracy of their results, but rather by a machine (e.g., the Intoxilyzer 5000) that takes in a specimen from the defendant and, through internal mechanisms and computer code, generates a test report; (2) the machine's computer code is unavailable to the defendant through discovery or compulsory process because the State avoids possessing it in Georgia; (3) the machine's test result is admissible at trial through a witness who can say that he was qualified to operate the machine and it operated as designed (see,

e.g., OCGA § 40-6-392 (a)), but who has no knowledge about whether the machine was in fact designed to produce reliable and accurate results under the circumstances presented; and (4) the machine uses up the specimen, with nothing maintained for later confirmation or independent testing.

HINES, Justice, dissenting.

I respectfully dissent because the opinion of the majority upturns well-founded Georgia precedent, and ignores obvious legislative intent, common sense, and the facts of this case.

As noted by the majority, this Court granted certiorari to the Court of Appeals in *Davenport v. State*, 303 Ga. App. 401 (693 SE2d 510) (2010), to consider whether the Court of Appeals erred in finding that Emily Davenport, who was convicted of driving with an illegal concentration of alcohol, OCGA § 40-6-391 (a) (5), failed to make a showing sufficient under the Uniform Act to Secure the Attendance of Witnesses from Without the State, OCGA § 24-10-90 et seq. ("the Act") to authorize the issuance of a subpoena to an out-of-state witness in order to attempt to discover the computer source code for the Intoxilyzer 5000 ("I-5000"), the breath testing machine utilized to obtain and test her breath sample. A source code is the instruction followed by a computing device in processing information. *Hills v. State*, 291 Ga. App. 873 (663 SE2d 265) (2008).

On October 12, 2007, Davenport was arrested for driving under the influence of alcohol, taken into custody, and given a breath-alcohol test on the I-5000. The I-5000 registered Davenport's blood-alcohol content at 0.156 grams. She was then charged with driving under the influence of alcohol and failure to maintain her lane. Davenport moved to require the State to produce the I-5000's computer source code, but the State did not have the source code in its possession or control. She sought to discover the source code by requesting an order authorizing the issuance of a subpoena to the Kentucky company that manufactured the I-5000. Davenport claimed that she had suffered from asthma since she was a young child, and she sought the source code in an attempt to prove that the I-5000 did not accurately register the blood-alcohol content of individuals with respiratory illnesses like hers; more specifically, she sought to compel the attendance of an out-of-state witness who worked for the manufacturer. Citing *Hills v. State*, supra, the trial court denied Davenport's motion, concluding that the source code was not discoverable. Following a bench trial, at which Davenport stipulated to the evidence, she was found guilty of driving with an illegal concentration of alcohol in violation of OCGA § 40-6-391 (a) (5). Davenport appealed to the Court of Appeals, raising the sole issue of whether the trial court abused its discretion in denying her

motion for an order authorizing issuance of a subpoena to the out-of-state I-5000 manufacturer. The Court of Appeals concluded that, based upon the particular facts of the case, the trial court did not abuse its discretion in refusing to issue the order sought by Davenport. In so doing, the Court of Appeals reaffirmed the holding in its long-established precedent that the party seeking the out-of-state witness has the burden of demonstrating that the sought witness is "necessary and material" to the case. *Davenport v. State*, supra at 402. See *Welch v. State*, 207 Ga. App. 27 (8) (427 SE2d 22) (1992); *Baines v. State*, 201 Ga. App. 354 (5) (411 SE2d 95) (1991); *Chesser v. State*, 168 Ga. App. 195, 196 (308 SE2d 589) (1983); *Mafnas v. State*, 149 Ga. App. 286 (1) (254 SE2d 409) (1979). See also *Holowiak v. State*, 308 Ga. App. 887 (709 SE2d 39) (2011).

The Court of Appeals was expressly and properly assessing the sufficiency of Davenport's showing before the trial court under the provisions of OCGA § 24-10-94 (a), which is plainly the subsection of the Act by which an out-of-state witness can be compelled to attend and testify at a criminal proceeding in Georgia. Yet, the majority, citing as its support the statutory law of a foreign state, concludes that whether the sought witness is "necessary and material" is the test solely under OCGA § 24-10-92 (b), which addresses the circumstance of a Georgia witness summoned to testify in a criminal proceeding in another state. It then accuses the Court of Appeals of repeatedly "misreading" the statutory scheme, and concludes that a Georgia trial judge presented with a request for a certificate under the Act is to decide only whether the sought out-of-state witness is a "material witness." But, such a conclusion is, at best, specious.

Focusing on "necessity and materiality" versus "materiality" is a distinction without a difference; if evidence is not necessary, it is not material. Indeed, tellingly and ironically, the majority advocates the express adoption of a definition of "material witness" found in Black's Law Dictionary (8th ed. 2004): "a material witness is '(a) witness who can testify about matters having some logical connection with the consequential facts, *esp. if few others, if any, know about these matters.*' " (Emphasis supplied.) Thus, by the majority's endorsed definition a "material witness" in this context is a witness that is "necessary" to the prosecution. Furthermore, even assuming arguendo that a showing of "necessity and materiality" is different and a greater burden than that of solely "materiality," it defies logic and flies in the face of judicial economy that the General Assembly intended that the threshold showing, i.e., that before the Georgia court, be lesser than that before the court in the foreign jurisdiction. To find otherwise permits a petitioner to utilize the judicial time and resources of two jurisdictions when the petitioner cannot initially prevail, and allows "necessity" to be decided solely by a court other

than the one faced with the trial of the case. As reasonably read by the Court of Appeals, OCGA § 24-10-94 (a) requires that the petitioner make a showing before the Georgia court of "necessity and materiality" in regard to the sought out-of-state witness. And, in this case, Davenport failed to demonstrate that her sought witness was either necessary or material to her criminal prosecution.

Certainly, under the Sixth Amendment to the United States Constitution and Article I, Section I, Paragraph XIV of the 1983 Georgia Constitution, a Georgia defendant facing criminal charges has the right to compulsory process for obtaining witnesses to be used in mounting a defense to the charges. And without question, the Act provides a process for obtaining a court order for the production of the out-of-state witness. However, it does not provide an absolute right to the presence of the out-of-state witness; the petitioner has the burden of presenting sufficient facts to enable the courts in both the demanding and receiving states to determine whether the witness should be compelled to travel to the foreign jurisdiction. Thus, as a matter of law and practicality, such determinations must be made at the trial level on a case-by-case basis and upon the evidence presented to the trial court. And, it follows that the decision whether to grant the process must be within the sound discretion of the trial court. Not only does this standard comport with the required evidentiary showing, but it reflects the plain statutory language of OCGA § 24-10-94 (a), which provides that the trial court *may* issue the sought certificate. In such a context, "may" is unquestionably a term of permissiveness, which authorizes the trial court to act in its discretion in determining whether to grant the certificate. *McCorquodale v. State*, 233 Ga. 369, 374 (3) (211 SE2d 577) (1974); see also *Campbell v. Dept. of Corrections*, 268 Ga. 408, 411 (2) (490 SE2d 99) (1997); *Mohammed v. State*, 226 Ga. App. 387, 388 (486 SE2d 652) (1997). There is no mandate that the trial court do so.

Davenport's evidentiary showing fell short of requiring the finding that any adjustments made in the I-5000 source code for asthma sufferers were material to her criminal prosecution. As outlined by the Court of Appeals, there was evidence that Davenport had not recently been treated for asthma; she did not recall the results of medical tests taken years before to measure her "vital capacity"; she claimed her asthma generally flared up following exercise or her being upset and that she became upset after she was arrested and handcuffed and realized that she was going to jail; she was upset and crying when she took the breath test, but any symptoms of respiratory distress by then had lessened; and that she had not used a prescribed inhaler on the date that she was arrested for driving under the influence of alcohol and administered the

breath-alcohol test on the I-5000. Davenport did not show that any breathing difficulties or lung capacity issues that she might have experienced before being administered the breath test on the I-5000 were related to any asthmatic or other chronic or diagnosed respiratory condition. In sum, she offered no concrete evidence, medical or otherwise, about the impact of her alleged asthma on her breathing capacity or about the status of her condition at the relevant time, that is, at the time of her breath testing. In addition, a review of the expert testimony she cites in relation to her own version of events compels the conclusion that, at best, the expert testimony is speculative.

Also, there is no merit to Davenport's assertion that the trial court's ruling denies her constitutional rights to compulsory process, confrontation, due process of law, and a fair trial. The contention is based upon the premise that the I-5000 is Davenport's accuser, invoking the constitutional right of confrontation. However, as noted by the State, the I-5000 is simply a tool used by law enforcement to determine the breath-alcohol content of a driver who is suspected of driving under the influence. Davenport was adjudged guilty by the trial court on the basis of evidence, to which Davenport stipulated, some of which was reported by the I-5000 after it was certified to be fully operational. In the context of a challenge to the admission into evidence of an inspection certificate for the Intoxilyzer, this Court has determined that there is no violation of the right of confrontation. *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006); *Brown v. State*, 268 Ga. 76, 80 (485 SE2d 486) (1997); see also *Jacobson v. State*, 306 Ga. App. 815, 818 (4) (703 SE2d 376) (2010). This is so, in part, because an inspection certificate, like a computer source code, is not testimonial in nature; it is part of the regular course of business regarding operation of the I-5000, and it is not utilized in an investigatory or adversarial setting or generated in anticipation of the prosecution of a particular defendant. *Rackoff v. State*, supra at 309 (2).

In sum, the majority splits semantic hairs in order to undermine long-standing precedent which logically and reasonably construes OCGA § 24-10-94 (a), effectuates the legislative intent, and comports with the practical application of the Act. Unfortunately, the facts of this case well demonstrate the fallacy of the majority's holding. Both the Court of Appeals and the trial court have already rightly assessed the failure of this criminal defendant's evidence under the correct standard. Nonetheless, each will be forced to parse such evidence for mere "materiality," which neither will find in the absence of "necessity." Permitting Davenport to yet again present her meritless argument to multiple tribunals, in what has become the latest round in the DUI defendants' arsenal to attempt to discredit the alcohol-

breath-testing machine, the Intoxilyzer 5000, is a blatant misuse of judicial resources.

The judgment of the Court of Appeals should stand.

I am authorized to state that Presiding Justice Carley joins in this dissent.

DECIDED JUNE 20, 2011.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Barry E. Morgan, Solicitor-General, Joseph W. Hudson, Assistant Solicitor-General*, for appellee.
*Charles C. Olson, Tasha M. Mosley*, amici curiae.