**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A0991. PHILLIPS v. THE STATE.                    DO-036 C

DOYLE, Presiding Judge.

Following a bench trial, Brett Robert Phillips was convicted of driving under the influence with an unlawful blood alcohol level ("DUI per se").[1] He appeals, arguing that the trial court erred by requiring him to proceed to trial without material and necessary evidence. We affirm, for the reasons that follow.

Viewed in favor of the verdict,[2] on March 3, 2006, a state trooper observed Phillips's car stopped at a red light without the headlights on. When the light turned green, Phillips accelerated rapidly, causing his tires to spin and the back of his vehicle to zigzag. The officer initiated a traffic stop, and when he approached Phillips, he

---

[1] OCGA § 40-6-391 (a) (5).

[2] See *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

noticed that Phillips's eyes were red and glassy, and the officer noted the odor of alcohol emanating from Phillips's vehicle. Phillips initially denied drinking alcohol, but then admitted that he had consumed a beer. The officer administered field sobriety tests, and Phillips exhibited all six clues indicative of alcohol intoxication during the horizontal gaze nystagmas test, two of eight possible clues during the walk-and-turn test, and two of four clues during the one-legged stand test. A road-side preliminary test of Phillips's breath registered positive for alcohol. The officer placed Phillips under arrest, and Phillips subsequently registered blood alcohol levels of 0.138 and 0.127 in two consecutive consensual breath tests administered on an Intoxilyzer 5000.

Phillips was charged with DUI per se, driving under the influence of alcohol to the extent it was less safe to do so ("DUI less safe"),[3] and laying drags.[4] On January 28, 2008, Phillips filed a motion for an order to produce the computer "source code" for the Intoxilyzer 5000. Thereafter, on April 25, 2012, the trial court issued a certificate pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at former OCGA § 24-10-94 (a), certifying that CMI, Inc., the Kentucky company that manufactured the Intoxilyzer 5000, "is a material witness

---

[3] OCGA § 40-6-391 (a) (1).

[4] OCGA § 40-6-251 (a).

2

in possession of . . . the computer source code for the Georgia version of the Intoxilyzer 5000[, which] source code is material because it is logically connected with the issues in this case."[5] On the same day, the trial court entered an order directing Phillips to deliver the certificate to the appropriate Kentucky court, "without delay, and to file with [the trial c]ourt proof of such delivery in due course"; the trial court specially set the case for trial at least 90 days from the order to allow Phillips an opportunity to secure an order from the Kentucky court. On August 27, 2012, the trial court issued a trial calendar notice scheduling the trial for September 13, 2012.

On August 28, 2012, Phillips filed a notice of filing of a July 16, 2012 order from the Daviess County, Kentucky Circuit Court addressing Phillips's and multiple other petitioners' motions seeking discovery of the Intoxilyzer 5000 source codes,[6] stating in relevant part that:

---

[5] See *Davenport v. State*, 289 Ga. 399, 403 (711 SE2d 699) (2011), citing Black's Law Dictionary (8th ed. 2004) (holding that a "'material witness'" is "'a witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about these matters.'").

[6] The Kentucky order addressed 20 petitions from defendants facing DUI prosecutions in Georgia, including Phillips.

1. Each of the Georgia certificates . . . are defective on their face. All of them seek discovery, which is not a proper purpose for the Uniform Act.

2. Each Georgia Certificate . . . fails to particularize any underlying facts showing how disclosure of the source code is "material" to any particular defendant's DUI test or any defendant's claim or defense in a particular DUI case. Instead, the discovery is directed toward providing a defense expert the opportunity to review the source code for purposes of a potential later challenge in the Georgia DUI court.

3. Each Georgia Certificate . . . seeks discovery of the source code, in electronic format, from CMI. Thus, an appearance by a CMI witness is not "necessary" for any specific Court appearance by CMI in any Georgia defendant's DUI case in Georgia. Further, Georgia DUI defendants have alternative means available to test an Intoxilyzer 5000 used in a specific defendant's case in Georgia.

4. This Court reaffirms its previous holding, in prior cases before this Court, that the source code is a trade secret and otherwise constitutes confidential business information of CMI. Even if the Georgia Certificates . . . were otherwise sufficient, it would be an undue hardship for CMI to produce the source code, in electronic format or otherwise, unless pursuant to a Protective Order.

5.     CMI has agreed to waive the facial defects in each of the Georgia Certificates . . . and to provide electronic disclosure of the source code to each of the Georgia Petitioners, and Intervening Petitioners, herein. This would be done at CMI's offices in Owensboro, Kentucky, pursuant to the Protective Order attached hereto. . . .

Phillips also filed a notice of filing a copy of the notice of appeal of the July 16, 2012 order filed in the Court of Appeals of Kentucky.

On September 13, 2012, the day of the specially set trial, Phillips filed a motion to correct his certificate of materiality.[7] When the trial court asked if the parties were ready to proceed to trial, defense counsel responded that he was not ready because they did not have the source code information from CMI, acknowledging that he did not know how long it would take the Kentucky court to resolve his appeal, but noting that it did not have a two-term rule. After hearing argument of counsel, the trial court required the trial to proceed, stating that the case was first reset on January 30, 2008, more than four years before, and noting that the Kentucky court found not only that

---

[7] Phillips also filed the affidavit of defense counsel's law clerk averring that she served CMI by serving the Secretary of the State of Georgia with copies of an April 27, 2012 subpoena pursuant to OCGA § 14-2-1510 (b), seeking the source codes and various other information relating to a specific Intoxilyzer 5000.

5

the certificate was defective, but also concluded that the discovery requests would cause an undue hardship.

On appeal, Phillips contends that the trial court erred by requiring him to proceed to trial without the source code and other requested information from CMI. We discern no basis for reversal.

First, Phillips argues that the trial court violated his rights to compulsory process by requiring him to proceed to trial without the witnesses and documents he sought from CMI.[8] This argument is without merit. As the Supreme Court of Georgia explained in *Davenport v. State*,[9]

> A Georgia court has authority to compel the attendance at a Georgia criminal trial of persons anywhere within Georgia[10]; however, process issued by Georgia courts does not have extraterritorial power. The Uniform Act to Secure the Attendance of Witnesses from Without the

---

[8] See id. at 399, quoting *Pennsylvania v. Ritchie*, 480 U. S. 39, 56 (107 SCt 989, 94 LE2d 40) (1987) ("The Sixth Amendment to the U.S. Constitution and Article I, Sec. I, Par. XIV of the Georgia Constitution guarantee a Georgia criminal defendant the right to compulsory process for obtaining witnesses in his defense. 'Criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.'") (punctuation omitted).

[9] Id.

[10] OCGA §§ 17-7-191, 24-10-21 (2012).

State in Criminal Proceedings . . . is intended to provide a means for state courts to compel the attendance of out-of-state witnesses at criminal proceedings. . . . Georgia's version of the Uniform Act,[11] is the statutory means by which a witness living in a state other than Georgia can be compelled to attend and testify at a criminal proceeding in Georgia[12]. . . . While the statute speaks only to securing the attendance of an out-of-state witness, the scope of the statute has been construed in Georgia and several other states to authorize issuance of a summons that requires the out-of-state witness to bring items or documents with the witness.[13]

As the *Davenport* Court explained, a Georgia court presented with a request for a certificate pursuant to the Act requesting the attendance in Georgia of an out-of-state witness and evidence solely has the task of determining whether the witness "is a material witness in a prosecution pending in a court of record in Georgia, and whether the state in which the out-of-state witness is located has laws for commanding

---

[11] OCGA § 24-10-90 et seq.

[12] OCGA § 24-10-94 (a) (2012).

[13] (Citations, punctuation, and footnote omitted.) *Davenport*, 289 Ga. at 400-401.

persons within its borders to attend and testify in criminal prosecutions in this state."[14] Then,

> [i]f those criteria are satisfied, the Georgia trial judge may issue a certificate under seal that is then presented to a judge of a court of record in the out-of-state county in which the witness is found. Upon presentation of the certificate, *the out-of-state judge holds a hearing at which the witness has been ordered to appear, to determine whether to issue a summons directing the witness to attend and testify in the Georgia criminal proceeding.*[15]

Here, the trial court considered the motion, and issued the certificate, which was then presented to the Kentucky court. It was then for the Kentucky court to decide whether the witnesses and evidence were material and necessary and should have been compelled.[16] Thus, the Georgia trial court had no authority to compel the witness.

---

[14] (Punctuation omitted.) Id. at 401.

[15] (Citation and punctuation omitted; emphasis supplied.) Id. at 401, citing OCGA § 24-10-92 (b) (2012); Ky. Rev. Stat. Ann. § 421.240 (2).

[16] We note that Phillips's arguments that the Kentucky court failed to hold a hearing on necessity and materiality in violation of the Uniform Act and lacked jurisdiction to enter the protective order are properly addressed to the Kentucky courts, and they do not provide a basis to *require* the trial court to postpone Phillips's DUI trial.

Absent a finding that the Kentucky court lacked jurisdiction (there is no such allegation here), the Kentucky order was entitled to full faith and credit pursuant to Article 4, Section 1 of the U. S. Constitution.[17] Although Phillips argues that the trial court should have waited until his appeal had been resolved, there is nothing in the record to indicate that the Kentucky appellate court issued a supersedeas of the order, and therefore, the Kentucky trial court's order was enforceable.[18]

We also reject Phillips's claim that the materials he sought from CMI constituted *Brady*[19] material and that his failure to obtain them violated his due process rights. To establish a *Brady* violation, the defense must show

> (1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.[20]

---

[17] See, e.g., *Veazey v. Veazey*, 246 Ga. 376, 377 (271 SE2d 449) (1980).

[18] See *Ferster v. Ferster*, 220 Ga. 319, 322 (2) (138 SE2d 674) (1964) (custody dispute).

[19] *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[20] *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994).

Phillips has not met his burden of establishing the first, third, or fourth factors, and therefore, this argument fails.[21]

Finally, we find meritless Phillips's argument that the trial court's failure to continue the trial violated his Sixth Amendment right to confront the witnesses against him, in this case, the Intoxilyzer itself. "The Confrontation Clause prohibits the introduction of only '*testimonial* statements of witnesses absent from trial.'"[22] As the Supreme Court of Georgia has held

> an inspection certificate [of the instrument used to conduct a breath test] prepared under OCGA § 40-6-392 (f) was not testimonial and was admissible. An inspection certificate is a record made and promulgated in the regular course of business. It is not made in an investigatory or adversarial setting; nor is it generated in anticipation of the prosecution of a particular defendant. It follows that an inspection certificate is not testimonial hearsay. . . .[23]

---

[21] See id.

[22] (Emphasis in original.) *Smith v. State*, 284 Ga. 304, 308 (3) (c) (667 SE2d 65) (2008), citing *Whorton v. Bockting*, 549 U. S. 406 (127 SCt 1173, 167 LE2d 1) (2007).

[23] (Citation omitted.) *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006).

This rationale applies to the "testimony" of the Intoxilyzer 5000 in this case, as well as the employee witnesses and documentation Phillips sought from CMI.

"[A] motion for continuance is addressed to the sound discretion of the trial judge, and the refusal to grant a continuance will not be disturbed by the appellate courts unless it clearly appears that the judge abused his discretion in this regard."[24] Here, the trial court granted a certificate pursuant to OCGA § 24-10-94 (2012) to permit the defense an opportunity to obtain the information and witnesses sought from CMI, specially set the case with enough time for the defense to do so, and after the Kentucky court issued an order denying Phillips's request for the information, which order was entitled to full faith and credit, required Phillips to proceed to trial.[25] Under these circumstances, we find no abuse of discretion.

*Judgment affirmed. Boggs, J., concurs. McFadden J., concurs fully and specially.*

---

[24] *Campbell v. State*, 231 Ga. 69, 75 (2) (200 SE2d 690) (1973).

[25] We note that at the time of trial, the case had been pending for more than six years, and defense counsel had filed approximately twenty leaves of absence.

A13A0991. PHILLIPS v. THE STATE.

MCFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to note that the Kentucky trial court failed to extend to the decisions of our trial courts the full faith and credit to which they are entitled. The Uniform Act to Secure the Attendance of Witnesses from Without the State provides, in this case, for proceedings in trial courts in Georgia and Kentucky and for separate exercises of discretion by trial courts in each state. The Kentucky trial court overstepped when it declared the decisions of our trial courts "defective on their face."