# WHOLE COURT

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**July 16, 2012**

# In the Court of Appeals of Georgia

A12A0671. CRONKITE v. THE STATE.

BOGGS, Judge.

We granted this application for interlocutory appeal to consider the trial court's denial of defendant Weston D. Cronkite's motion for a certificate of need for testimony under OCGA §§ 24-10-90 et seq., The Uniform Act to Secure the Attendance of Witnesses from Without the State ("the Act"). Cronkite sought to obtain, among other things, the "source code" or human-readable programming instructions for the Intoxilyzer 5000, by means of the testimony of a representative of the Kentucky manufacturer. The trial court concluded that such evidence was not "material" within the meaning of OCGA § 24-10-94 (a), and declined to issue a certificate. Because the trial court did not abuse its discretion in so concluding, we affirm.

After Cronkite was stopped for speeding on January 15, 2010, he submitted to a breath test using an Intoxilyzer 5000, which returned readings of 0.187 and 0.201. Cronkite was arrested and charged with speeding, driving under the influence per se, and driving under the influence to the extent he was a less-safe driver. The parties stipulated that Cronkite has a surgical implant in his upper jaw and a retainer on his lower teeth.

Before trial, Cronkite filed a motion pursuant to OCGA § 24-10-90 et seq. for "an [o]rder finding that the computer source code of the Intoxilyzer 5000 . . . is material, relevant and necessary to preparing the defense in this criminal prosecution." He also sought "other required assembly tools and compiler tools that are necessary for proper software evaluation," and

> copies of the manufacturer's software assembly requirements and software specifications, any linked objects/files with comments preserved therein, and with any message digest (MD5) file signatures, information, documentation, and identification as to the software maker for the machine (if outsourced from [the manufacturer]), any compiled code, data tables and any associated (MD5) file signatures, as well as any systems "Test and Validation" plans studies or reports.

2

Finally, he sought to subpoena one or more out-of-state witnesses to produce the source code.[1]

At the hearing on his motion, Cronkite presented Matthew Malhiot, a "forensic breath alcohol consultant," as an expert witness.[2] Malhiot testified regarding the operation of the Intoxilyzer 5000, the internal calibration of the machine, and the role of the software, including the source code, in controlling its internal calibration. Specifically, he testified that the software is designed to generate error messages in "numerous" circumstances that might produce an erroneous reading, including the presence of excess alcohol in the mouth. The witness described the manner in which the software determined the presence of mouth alcohol but testified that, without knowledge of the parameters established in the source code, he could not determine the range or "cutoff . . . for a particular error message."

---

[1] *Yeary v. State*, 289 Ga. 394, 398 (711 SE2d 694) (2011), allows the movant for such a certificate to identify a corporation as the alleged material witness without designating a particular representative, but in his motion Cronkite identified three individuals whose testimony he sought.

[2] While Malhiot did not testify to any training or education in reading or interpreting source code, the parties stipulated to his expertise solely "for the specific narrow issue as to the materiality certificate."

While Malhiot testified at some length regarding the potential for errors in the source code of the software used in the Intoxilyzer 5000, he had never examined the source code itself and could not determine that any error actually existed in the absence of the source code.[3] He found no indication that an invalid sample was obtained in Cronkite's case and could not determine whether mouth alcohol was present. He acknowledged that he could not testify "for a fact" that the presence of implants or partial dentures trapped excess alcohol and affected the test results in this case: "It's not necessarily absolute. It can cause it." He also acknowledged that the Intoxilyzer had "safeguards" which were designed to produce an error warning in the presence of excess alcohol in the mouth.

The trial court's ruling from the bench, in its entirety, was as follows:

[Defense counsel] . . . just had a very . . . impressive witness. So I'm very impressed with the witness. I'm not going to agree with your argument, though. I think you had good evidence; you had, I guess, the strongest type of argument you can make *given the facts of our case here*. But I'm not going [to] find that he's material, although, you know, like I indicated, he certainly was very credible. (Emphasis supplied.)

---

[3]He also testified that Georgia has multiple versions of the source code in use.

In its written order, the trial court expressly found that the evidence sought was not "material under the facts of this case" and made no findings with respect to the expert's credibility. The trial court issued a certificate of immediate review, and this court granted Cronkite's application for an interlocutory appeal.

OCGA § 24-10-94 (a) provides:

> If a person in any state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

Our Supreme Court has defined the term "material witness" within the meaning of this statute as "a witness who can testify about matters having some logical connection with the consequential facts" of the case. (Citation and punctuation

omitted.) *Davenport v. State*, 289 Ga. 399, 404 (711 SE2d 699) (2011). We review the trial court's ruling under an abuse of discretion standard. See id. at 399.

Applying this standard, we conclude that the trial court did not abuse its discretion in declining to issue a certificate. The ruling correctly distinguished between the *credibility* of Malhiot and his testimony, and the *materiality* to this case of the evidence sought by Cronkite through the manufacturer's representative. To hold otherwise would require a court to issue a certificate whenever a testifying witness was found credible.

Although an expert may testify to his opinion, "when the basis of his opinion is given and it appears that it is wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict." (Citation, punctuation and emphasis omitted.) *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006). Here, in sum, Malhiot's testimony was that, although he could not testify to any facts supporting the existence of an error in Cronkite's breath test results, and the Intoxilyzer had safeguards against the error in question, it was *possible* that the software contained some unknown flaw that *could have* affected the test results. The witness was not required, as the dissent asserts, to

6

demonstrate an error in the source code. He was, however, required to testify to some *fact* indicating the possibility of an error *in this case*, and the trial court did not abuse its broad discretion in finding that he failed to do so.

The question presented here is not whether the source code itself, without which the Intoxilyzer will not function, has "some logical connection" with the consequential facts of this case, as proposed by the dissent. Were that the case, the source code would be relevant to every breath test resulting in a DUI prosecution in Georgia. Rather, the question is whether the trial court could have concluded, in the exercise of its discretion, that the testimony presented at the hearing failed to provide any evidence of an *error* in the source code that was *material* to this case. Some evidence of such an error is the consequential fact that would render testimony regarding the source code logically connected to the issue presented here.

As to this question, the witness was only able to speculate; and just as speculation will not support a verdict, it likewise cannot support a finding of materiality.[4] Otherwise, anyone with evidence sought by a party could be rendered

[4]While the dissent correctly observes that admissibility is distinct from materiality, a finding of materiality under OCGA § 24-10-94 (a) must nevertheless be supported by admissible and probative evidence. The rules of evidence are the same in all courts unless otherwise provided by statute, OCGA § 24-1-3, and the determination that a witness is a "material witness" must itself be supported by

a "material witness" merely by speculation that examination of the evidence sought *might* reveal some material fact.

Here, Malhiot's testimony, though found worthy of belief by the trial court, does not establish the materiality of the evidence sought sufficiently to show an abuse of discretion. The trial court was well within its broad discretion to conclude that Malhiot's testimony with respect to the source code was speculative and to decline to issue a certificate on that basis.

*Judgment affirmed. Ellington, C. J., Andrews and Dillard, JJ., concur. Barnes, P. J., Phipps, P. J., and Doyle, P. J., dissent.*

---

admissible evidence. Moreover, the trial court is authorized to use its discretion in determining the weight to assign to a witness' speculation on a finding of materiality.

A12A0671. CRONKITE v. THE STATE.

DOYLE, Presiding Judge, dissenting.

Because I believe the trial court abused its discretion in this case, I respectfully dissent.

As stated by the majority, *Davenport v. State*,[1] a similar case addressing an attempt to review the source code of the Intoxilyzer 5000, established the following definition of a "material witness": one "who can testify about matters having some logical connection with the consequential facts, esp[ecially] if few others, if any, know about these matters."[2]

---

[1] 289 Ga. 399, 404 (711 SE2d 699) (2011).

[2] (Punctuation omitted.) Id. at 404. *Davenport* did not reach the question of whether the witness was a material witness.

Here, the trial judge stated on the record that he was "impressed" with Malhiot's testimony, that his testimony was "very credible," and that Cronkite had presented "good evidence." This testimony explained in detail how certain parameters included in the source code directly affect the Intoxilizer's ability to calibrate itself, to detect and to identify errors in the test, and to return accurate readings. And it is undisputed that few, if any, witnesses other than the one sought by Cronkite can testify as to the content of the source code. Therefore, based on the uncontroverted evidence deemed credible by the trial court at the hearing, the court abused its discretion by concluding that the source code had no logical connection with the consequential facts of this case.

Although the State and majority are correct that Cronkite presented no evidence of actual inaccuracies in the blood alcohol readings either due to calibration errors or Cronkite's dental implants, requiring a criminal defendant to demonstrate errors in the source code without allowing him to examine it frustrates entirely his rights under the U. S. and Georgia Constitutions to compulsory process for obtaining witnesses

in his defense.[3] As noted by the concurrence in *Davenport*, the material witness standard alleviates due process concerns that can exist

> when the State enacts a statutory scheme in which: (1) evidence usually determinative of the defendant's guilt (e.g., blood alcohol content in a per se DUI prosecution) is tested and reported, not by forensic experts who testify and face cross-examination on the reliability of their methods and the accuracy of their results, but rather by a machine (e.g., the Intoxilyzer 5000) that takes in a specimen from the defendant and, through internal mechanisms and computer code, generates a test report; (2) the machine's computer code is unavailable to the defendant through discovery or compulsory process because the State avoids possessing it in Georgia; (3) the machine's test result is admissible at trial through a witness who can say that he was qualified to operate the machine and it operated as designed (see, e.g., OCGA § 40-6-392 (a)), but who has no knowledge about whether the machine was in fact designed to produce reliable and accurate results under the circumstances presented; and (4) the machine uses up the specimen, with nothing maintained for later confirmation or independent testing.[4]

---

[3] See id. at 399 ("The Sixth Amendment to the U.S. Constitution and Article I, Sec. I, Par. XIV of the Georgia Constitution guarantee a Georgia criminal defendant the right to compulsory process for obtaining witnesses in his defense.").

[4] *Davenport*, 289 Ga. at 404-405 (Nahmias, J., concurring).

3

Further, if, as explained by Cronkite's witness, the source code's parameters were flawed, the blood alcohol readings returned by the Intoxilyzer would not be reliable *despite the lack of evidence of error*. Thus, the materiality of the source code is demonstrated by the fact that the sole evidence of Cronkite's specific blood alcohol concentration depends on the accuracy and function of the source code's parameters.[5]

Moreover, the majority appears to overlook the limited nature of the inquiry at this stage of the proceedings. As explained by our Supreme Court in *Davenport*, the first level of inquiry when a motion is filed under OCGA § 24-10-94 (a) is whether the person is a material witness in a pending prosecution in a Georgia court of record and whether the other state has laws for commanding persons within its borders to attend and testify in criminal prosecutions in Georgia.[6] What is not at issue at this

---

[5] The majority characterizes the expert's testimony as wholly speculative and therefore without probative value. But this ignores the non-speculative testimony as to how the source code controls the Intoxilizer 5000 and how the software influences the outcome of the analysis. Such testimony must be seen to have some logical connection to the consequential facts. As more fully explained by *Layfield v. DOT*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006), cited by the majority, "the appropriate standard for assessing the admissibility of the opinion of [an] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so." But even this argument is premature, because what is at stake in this case is *materiality*, not *admissibility*.

[6] See id. at 401. Whether the foreign state has laws for commanding persons to testify in Georgia is not at issue in this case.

4

stage is whether that witness is *necessary* to the pending prosecution. That question is reserved for the out-of-state court, if the Georgia court issues a certificate of materiality. The out-of-state court must make its own determinations as to whether "the witness is material and necessary to the Georgia criminal proceeding, [whether] compelling the witness to attend the Georgia proceeding and testify would . . . cause an undue hardship to the witness, and [whether] Georgia will give the witness protection from arrest and the service of civil or criminal process."[7] Indeed, in *Davenport*, the Georgia Supreme Court held that it was improper for the Georgia court to weigh whether the witness was *necessary*; what matters here is only whether the witness is *material*:

> the Georgia trial court evaluates the request under OCGA § 24-10-94 and *must determine only whether the out-of-state witness is a "material witness" in the Georgia criminal prosecution* and whether it should issue the certificate requesting the out-of-state court to order the out-of-state witness to attend the criminal proceeding in Georgia.[8]

---

[7] Id. at 401.

[8] (Emphasis suppiled.) Id. at 402.

5

Thus, under *Davenport*, the case before us presents only the question of whether the out-of-state witness can testify about matters with some logical connection to the consequential facts of this case.

I am cognizant of the potential for abuse of this process. But this case is controlled by the statutory scheme established by the General Assembly and the precedent of the Georgia Supreme Court interpreting that scheme. In light of the trial court's explicit findings of credibility and the relatively low threshold for materiality established by the Supreme Court in *Davenport*, I conclude that the trial court abused its discretion by determining that the Intoxilizer's source code was not material to this case.

I am authorized to state that Presiding Judge Barnes and Presiding Judge Phipps join in this dissent.