## S12G1927. CRONKITE v. THE STATE.
(745 SE2d 591)

MELTON, Justice.

In connection with his DUI prosecution, Weston D. Cronkite filed a motion under the Uniform Act to Secure the Attendance of Witnesses from Without the State, former OCGA § 24-10-94,[1] to obtain, through the testimony of an out-of-state witness, the source code for the Intoxilyzer 5000, the device that was used to test his breath at the

---

[1] We note that, as of January 1, 2013, our new Evidence Code has moved the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State from former OCGA §§ 24-10-90 – 24-10-97 to current OCGA §§ 24-13-90 – 24-13-97. The provisions of former OCGA § 24-10-94 can now be found in our new Evidence Code under OCGA § 24-13-94. The references to the former Code throughout this opinion are necessary in light of the fact that Cronkite's motion was filed before the effective date of our new Evidence Code.

time that he was pulled over.[2] The trial court denied the motion, finding that the evidence was not material, and, on interlocutory appeal, the Court of Appeals affirmed, concluding that the trial court did not abuse its discretion. See *Cronkite v. State*, 317 Ga. App. 57 (730 SE2d 694) (2012).

In reaching its decision, the Court of Appeals applied this Court's decision in *Davenport v. State*, 289 Ga. 399, 404 (711 SE2d 699) (2011), which also dealt with a defendant seeking evidence relating the source code of the Intoxilyzer 5000, and established that a "material witness" under former OCGA § 24-10-94 is "a witness who can testify about matters having some logical connection with the consequential facts." The Court of Appeals concluded that Cronkite's expert's testimony amounted only to speculation that the Intoxilyzer 5000 software contained an unknown flaw that could have affected the test results and thus failed to establish the materiality of the source code. The Court of Appeals stated that, although the expert was not required to demonstrate an error in the source code, the expert was required to testify to "some fact indicating the possibility of an error in this case," as "[s]ome evidence of such an error [in the source code] is the consequential fact that would render testimony regarding the source code logically connected to the issue presented here." *Cronkite*, supra, 317 Ga. App. at 60. This Court granted Cronkite's petition for certiorari to determine whether the Court of Appeals properly applied *Davenport*, supra. For the reasons that follow, we affirm.

As an initial matter, we must state that, while we agree with the bottom line of the Court of Appeals' decision, we do not agree with its analysis. Specifically, although the Court of Appeals properly recognized, as this Court stated in *Davenport*, that a "material witness" is "a witness who can testify about matters having some logical connection with the consequential facts" of the case (see *Cronkite*, supra), the Court of Appeals was incorrect to conclude that evidence of a

---

[2] The "source code" consists of human-readable programming instructions that play a role in controlling the internal calibration of the Intoxilyzer 5000 machine. In this regard, Cronkite presented an expert witness to the trial court who

testified regarding the operation of the Intoxilyzer 5000, the internal calibration of the machine, and the role of the software, including the source code, in controlling [the machine's] internal calibration. [The expert] testified that the software is designed to generate error messages in "numerous" circumstances that might produce an erroneous reading, including the presence of excess alcohol in the mouth. The [expert] described the manner in which the software determined the presence of mouth alcohol but testified that, without knowledge of the parameters established in the source code, he could not determine the range or "cutoff . . . for a particular error message."

*Cronkite v. State*, 317 Ga. App. 57, 58 (730 SE2d 694) (2012).

possible error *in the source code* was the essential "consequential fact that would render testimony regarding the source code logically connected to the issue presented [in this case]." Id. at 60. Indeed, it cannot be the case that a defendant must be able to show the possibility of an error in the source code itself in order to compel testimony regarding the very same source code. Rather, the "consequential facts" of this case deal with whether the Intoxilyzer 5000 may have generated erroneous results from Cronkite's breath test. Thus, in order to show that the out-of-state witness who was to provide testimony regarding the source code was a "material witness" in this case, Cronkite was required to show that the witness' testimony regarding the source code bore a logical connection to *facts* supporting the existence of an error in his breath test results. As explained more fully below, because Cronkite failed to do this, the trial court was correct to conclude that the out-of-state witness was not a "material witness."

Here, the parties stipulated that Cronkite has a surgical implant in his upper teeth and a retainer on his lower teeth. Cronkite contends that the implant and retainer can allow alcohol to remain present in the mouth, and, in this regard, his expert testified that the Intoxilyzer 5000 software is designed to generate error messages in certain circumstances where an erroneous reading may occur, including circumstances involving the presence of alcohol in the mouth. However, Cronkite presented *no* evidence that mouth alcohol was present during his breath test such that an error message should have been generated that was not generated. Indeed, the mere possibility that alcohol *can* remain present in the mouth due to the existence of a surgical implant and retainer does not amount to evidence of facts pointing to the *actual existence* of excess alcohol in the mouth at the time of Cronkite's breath test that should have produced an error message from the Intoxilyzer 5000 that was not produced. Nor did Cronkite point to any other evidence of *facts* supporting the existence of a possible error in his specific breath test results such as discrepancies in the operation of the Intoxilyzer 5000 machine itself. See, e.g., *State v. Bastos*, 985 So.2d 37, 43 (Fla. App. 2008) (witness who would have testified regarding source code for Intoxilyzer 5000 in DUI case was not a "material witness" where defendant failed to make "particularized showing demonstrating . . . observed discrepancies in the operation of the [Intoxilyzer 5000] machine [that] necessitate[d] access to the source code"). Thus, he made no logical connection between possible problems in the source

code and any consequential facts in his case that would have made the out-of-state witness' testimony regarding the source code "material" here.[3]

Accordingly, we agree with the Court of Appeals that, under the standard established in *Davenport* and under the facts of this case, the trial court did not abuse its discretion in concluding that the witness sought by Cronkite to provide evidence regarding the source code for the Intoxilyzer 5000 was not a "material witness."[4]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 1, 2013 —
RECONSIDERATION DENIED JULY 24, 2013.

*McIlhinney & Sessions, Daniel B. Sessions, Head, Thomas, Webb & Willis, Gregory A. Willis*, for appellant.

*Rosanna M. Szabo, Solicitor-General, Meredith L. Chafin, Assistant Solicitor-General*, for appellee.

*Fredric D. Bright, District Attorney, Charles C. Olson, Carlton T. Hayes, Charles A. Spahos, Assistant District Attorneys*, amici curiae.

---

[3] We note that, even if Cronkite had made a proper showing of materiality, an open question still remains regarding the extent to which the trial court would be obligated to issue a certificate to compel the out-of-state witness' presence in Georgia, as former OCGA § 24-10-94 (a) states that

> [i]f a person in any state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence, a judge of such court *may* issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required.

(Emphasis supplied.) See also current OCGA § 24-13-94 (a). While we specifically decline to reach any issue regarding the extent to which a trial court might (or might not) have some degree of discretion under former OCGA § 24-10-94 (a) to issue a certificate in light of the use of the term "may" in the statute (as the term could imply something other than unfettered discretion of the trial court in this context), we nevertheless believe that it is important to alert the bench and bar to this issue.

[4] In light of the fact that the trial court properly exercised its discretion under former OCGA § 24-10-94 (a) in finding that the out-of-state witness was not a "material witness," Cronkite's argument that he was denied his right to compulsory process is entirely without merit. See *Davenport*, supra.