**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 4, 2013**

# In the Court of Appeals of Georgia

A13A0995. YOUNG v. THE STATE.

A13A0996. KOMER v. THE STATE.

A13A1170. FISHER v. THE STATE.

A13A1171. HABIB v. THE STATE.

A13A1172. KIENZLE v. THE STATE.

A13A1173. ODLE v. THE STATE.

A13A1773. ANTHONY v. THE STATE.

A13A1774. WECKBACK v. THE STATE.

A13A1775. OSBORNE v. THE STATE.

A13A1776. SIMMONS v. THE STATE.

BRANCH, Judge.

In each of these ten DUI cases, we granted interlocutory review of the trial court's consolidated decision to deny the defendants' similar motions to determine the

relevance and materiality of the source code[1] of the Intoxilizer 5000 in connection with the defendants' attempt to secure production of that proprietary source code from CMI, Inc., the machine's manufacturer, in Kentucky. We affirm.

Each appellant before us was arrested in Athens-Clarke County for driving under the influence of alcohol and was given an alcohol breath test on an Intoxilyzer 5000. Based on the results of the test, each appellant was charged with DUI per se under OCGA § 40-6-391 (a) (5). In each case, the appellant filed a motion seeking a determination of relevance and materiality of the source code of the Intoxilyzer 5000 in order to facilitate either an out-of-state subpoena for production of the source code, an order requiring production of the source code, or a subpoena duces tecum for an out-of-state witness and the source code.[2] The trial court conducted a consolidated

---

[1] "The 'source code' consists of human-readable programming instructions that play a role in controlling the internal calibration of the Intoxilyzer 5000 machine." *Cronkite v. State*, __ Ga.__, n. 2 (745 SE2d 591) (2013).

[2] In A13A0995 and A13A1170, the defendants each filed a motion seeking production of the source code and asked the court to find that the source code was relevant and material to the defendant's defense. In A13A1170, the defendant amended his motion to indicate that he was seeking to serve several subpoenas duces tecum. In A13A0996 and A13A1171, the defendants each filed a motion seeking a finding that the source code was both relevant and material to the defendant's prosecution in order to facilitate the defendant filing an out-of-state subpoena on CMI, thereby requiring CMI to produce the source code and other tools necessary to read and test the source code; the motions also asked the court to order production of the

hearing on the ten separate motions at which four witnesses testified: appellant Habib,[3] two defense experts, and one expert for the State. Following the hearing, the trial court concluded that the appellants had not established that the source code was material under the Supreme Court of Georgia's decision in *Davenport v. State*, 289 Ga. 399, 400 (711 SE2d 699) (2011), and accordingly it denied the motions. This Court granted the defendants' applications for interlocutory review.

1. The appellants first contend that the trial court failed to apply the relevant law found in *Davenport* regarding the circumstances under which an out-of-state witness is deemed material. We disagree.

---

source code and the related items. In A13A1171, the defendant amended the motion to state that the request was being made pursuant to former OCGA § 24-10-90 et seq., the Uniform Act to Secure the Attendance of Witnesses from Without the State, to obtain a subpoena duces tecum from the foreign court for an out-of-state witness to appear before the Georgia court to bring the source code and other requested items. In A13A1172, A13A1173, A13A1773, A13A1774, A13A1775, and A13A1776 the defendants each filed a petition under former OCGA § 24-10-94.

[3] Habib, the only defendant to testify at the hearing, testified that he has suffered from anxiety since he was in twelfth grade and that he was on medications at the time of his arrest as a result. He testified that he was very emotional and was crying and hyperventilating when he was tested on the Intoxilyzer 5000. As a result, he had to blow into the machine twice in order to obtain a reading. Although there is some indication in the brief of appellant Komer that she also was crying and hyperventilating during her test, the citation to the record does not reveal any such evidence and we find none.

3

Because "process issued by Georgia courts does not have extraterritorial power," Georgia, like the 49 other states, enacted the Uniform Act to Secure the Attendance of Witnesses from Without the State (the "Uniform Act"), OCGA § 24-13-90 et seq.[4] (Citation omitted.) *Davenport*, 289 Ga. at 400. The Uniform Act provides the statutory means to compel an out-of-state witness to testify at, or to bring relevant documents to, criminal proceedings in Georgia. See OCGA § 24-13-94 (a).[5] And an out-of-state corporation is considered a witness under the Uniform Act. See

---

[4] As of January 1, 2013, Georgia's new Evidence Code has moved the provisions of the Uniform Act from former OCGA §§ 24-10-90 through 24-10-97 to current OCGA §§ 24-13-90 - 24-13-97. The provisions of former OCGA § 24-10-94 can now be found in OCGA § 24-13-94.

[5] OCGA § 24-13-94 (a) provides in full:
 If a person in any state which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this state is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

*Yeary v. State*, 289 Ga. 394, 396-397 (711 SE2d 694) (2011) ("an out-of-state corporation may be "a person" that is a material witness under the Uniform Act and may be determined to be in possession of material evidence").

Under the Uniform Act, a party desiring to secure the attendance of an out-of-state witness in a prosecution or grand jury investigation pending in a Georgia court may request that the court issue a certificate of materiality regarding that witness. OCGA § 24-13-94 (a). "The Georgia trial judge presented with a request for a certificate is charged with deciding whether the sought-after witness is a 'material witness.'" *Davenport*, 289 Ga. at 402-403. In *Davenport*, the Supreme Court defined "material witness" as "'a witness who can testify about matters having some logical connection with the consequential facts, esp[ecially] if few others, if any, know about these matters.'" Id. at 404, quoting Black's Law Dictionary (8th ed. 2004).

The Supreme Court has recently applied *Davenport* to a case similar to those before us. See *Cronkite*, __ Ga. at __ (745 SE2d 591) (2013). In that case, Cronkite filed a motion under the Uniform Act to obtain "through the testimony of an out-of-state witness, the source code for the Intoxilyzer 5000." Id. The Supreme Court explained that under *Davenport*, a defendant seeking to show that an out-of-state witness was a material witness regarding the source code of the Intoxilyzer 5000 "[is]

required to show that the witness' testimony regarding the source code [bears] a logical connection to facts supporting the existence of an error in [the defendant's] breath test results." Id. at \_\_.[6] The parties stipulated that Cronkite had a surgical implant and a retainer in his mouth at the time of his breath test, and Cronkite argued that his implant and retainer could allow alcohol to remain in his mouth. Id. at \_. Finally, Conkite's expert testified that

> the Intoxilyzer 5000 software is designed to generate error messages in certain circumstances where an erroneous reading may occur, including circumstances involving the presence of alcohol in the mouth.

Id. at \_\_.

The Supreme Court held that this showing was insufficient because Cronkite "presented no evidence that mouth alcohol was present during his breath test such that an error message should have been generated that was not generated. . . . Nor did Cronkite point to any other evidence of facts supporting the existence of a possible error in his specific breath test results such as discrepancies in the operation of the Intoxilyzer 5000 machine itself." Id. at \_\_ ("the mere possibility that alcohol *can*

---

[6] The Supreme Court explained that the term "consequential facts" as used in *Davenport* "deal with whether the Intoxilyzer 5000 may have generated erroneous results from Cronkite's breath test."

remain present in the mouth due to the existence of a surgical implant and retainer does not amount to evidence of facts pointing to the *actual existence* of excess alcohol in the mouth at the time of Cronkite's breath test that should have produced an error message from the Intoxilyzer 5000 that was not produced") (emphasis in original). As a result, "he made no logical connection between possible problems in the source code and any consequential facts in his case that would have made the out-of-state witness' testimony regarding the source code material' here." Id. at __. The Supreme Court therefore concluded that the trial court had not abused its discretion by concluding that Cronkite had failed to show that the proposed witness was material under the Uniform Act and *Davenport*.

In each of the ten almost identical orders issued in June 2012 in the present cases, the trial court applied *Davenport* and found that the evidence presented at the hearing did not establish the materiality of the source code, that is, that the evidence did not establish that the source code was logically connected with the consequential facts. In so doing, the trial court found that the testimony of Thomas Workman – one of the two defense experts – was "less than credible." We review the trial court's decision for abuse of discretion. See *Cronkite*, __ Ga. at __.

7

As shown below, only appellant Habib introduced specific evidence attempting to establish the existence of an error in his breath test results. The remaining nine appellants only offered expert testimony generally that "the source code of the machine is logically related to the consequential fact of the reliability and accuracy of the result generated by the Intoxilyzer 5000." These nine failed to present *any* evidence of facts supporting the existence of an error in their specific breath test results. Accordingly, under the rules established by the Supreme Court in *Davenport* and *Cronkite*, those nine appellants failed to show that the source code for the Intoxilyzer 5000 bears a logical connection with the consequential facts. The trial court therefore did not abuse its discretion by concluding that the source code, or a witness testifying to the source code, was not material under the Uniform Act with regard to these nine appellants.

As for Habib, he presented evidence that at the time he was tested on the Intoxilyzer 5000 he was crying and hyperventilating.[7] And defense expert Workman testified that Habib's crying and hyperventilation "could" have led to an inaccurate breath test result and that it would be necessary to see the source code in order to

---

[7] Although Habib testified at the hearing, nothing in this opinion should be interpreted as holding that defendants are required to testify under these circumstances. That issue is not before us.

8

investigate that possibility further. He also testified that '[i]t's pretty well established that a person who is hyperventilating will produce a higher breath result. That's reflected in the literature." He asserted that the source code "would help quantify whether the machine makes any adjustments for that and, if so, what adjustments are made, are they made up or are they made down and end results and were they made in the proper direction."[8] But, as stated above, the trial court found that Workman's testimony was not credible. Without Workman's testimony, we are left with only the mere possibility that Habib's crying and hyperventilation could have produced of an erroneous breath test result, which is insufficient to establish the materiality of the source code under *Davenport*. See *Cronkite*, __ Ga. at __.

Accordingly, because the defendants, including Habib, failed to present any evidence of facts supporting the existence of an error in their breath test results as required by *Davenport*, the trial court did not abuse its discretion when it determined that Habib failed to show that CMI was a material witness under the Uniform Act.

2. The appellants contend that by failing to grant a certificate of materiality, the trial court violated their state and federal constitutional rights to due process,

---

[8] The second defense expert did not offer testimony regarding Habib's crying and hyperventilation.

compulsory process, and a fair trial. Because, as shown above, the Uniform Act provides the procedure for compelling an out-of-state witness to testify at, or to bring relevant documents to, criminal proceedings in Georgia, we interpret this enumeration as an attack on the constitutionality of the Uniform Act or specific provisions therein. And because the trial court did not specifically rule on the constitutionality of the Uniform Act or any of its provisions, the issue cannot be considered on appeal. *Darby v. State*, 239 Ga. App. 492, 494 (2) (b) (521 SE2d 438) (1999) (appellant review precluded where constitutional question was raised in a motion but not explicitly ruled on in the trial court); see also *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995).

3. The appellants contend that the trial court erred because the appellants' "proffers, affidavits,[9] and testimony alone and in combination established materiality, and because the State failed to provide any evidence to rebut that materiality." A review of their briefs shows that the appellants are arguing in essence that the trial court should have accepted their counsels' statements, i.e., their proffers, that the source code was material to their defense and that any evidence on the matter of

---

[9] There are no applicable affidavits in the record and therefore no affidavits for us to review.

10

materiality was not necessary. This enumeration is controlled by Division 1 of this opinion and *Cronkite*, which requires evidence of facts to show that the proposed witness is material.

4. Finally, the appellants contend the trial court erred by failing to follow certain federal case law. But we are tasked here with construing and applying the terms of the Uniform Act as codified in Georgia. And, in the absence of a federal question, this Court is not normally bound by federal court decisions except those of the United States Supreme Court, especially if pertinent Georgia authority exists. See *Sanchez v. State*, 234 Ga. App. 809, 810, n. 1 (508 SE2d 185) (1998); *Rodgers v. First Union Nat. Bank*, 220 Ga. App. 821, 822 (1) (a) (470 SE2d 246) (1996); *T.G. Stegall Trucking Co. v. Tower Lines*, 135 Ga. App. 286, 288 (5) (217 SE2d 488) (1975). Here, the construction and application of the Uniform Act as codified in Georgia is controlled by the Georgia Supreme Court's decisions in *Davenport* and *Cronkite*. And

11

in Division 1, we applied that law. Moreover, the cases cited by appellants are distinguishable, in large part because none concern the Uniform Act.[10]

*Judgments affirmed. Phipps, C. J., and Ellington, P. J., concur.*

---

[10] The case of *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), involved whether a federal district court erred under Rule 16 of the Federal Rules of Criminal Procedure by denying discovery of an FBI-modified version of commercially available software that the FBI had used to remotely download evidence from the defendant's computer and which may have altered the evidence on his computer. Id. at 1111-1112 (V). Although Rule 16 turned on the "materiality" of the evidence, the term was defined differently under applicable federal law than the definition of a "material witness" found in the Uniform Act. Id. In *United States v. Liebert*, 519 F.2d 542 (3d Cir. 1975), the Third Circuit addressed "[w]hether pretrial discovery may be used to secure extrinsic evidence to impeach the reliability of computer printouts which are the fundament of the prosecution's case."). Id. at 543. But, as in *Budziak*, the issue turned on application of Rule 16 of the Federal Rules of Criminal Procedure. Id. at 546-547 (III). Finally, *Budziak*, *Liebert*, and *United States v. Dioguardi*, 428 F.2d 1033 (2d Cir. 1970), involved information in the possession of the prosecuting government, unlike the present case in which an out-of-state entity possesses the desired information; the present case is therefore distinguishable because "it is not within the power of the Georgia courts to compel the attendance of witnesses who are beyond the limits of the state." *Minder v. State of Ga.*, 183 U. S. 559, 562 (22 SCt 224, 46 LEd 328) (1902). See also *Wilkerson v. State*, 139 Ga. App. 725, 727 (229 SE2d 529) (1976) (Uniform Act enacted in response to United States Supreme Court decision in *Minder*).