**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 30, 2014**

# In the Court of Appeals of Georgia

 A14A0669. ABURTO v. THE STATE.

PHIPPS, Chief Judge.

Victor Hugo Aburto appeals his conviction for aggravated sodomy, criminal attempt to commit rape, and related crimes. Aburto claims that the trial court erred by (i) denying his motion to subpoena two out-of-state witnesses, and (ii) commenting on the evidence in violation of OCGA § 17-8-57. Aburto also claims that he was denied effective assistance of trial counsel. For the reasons set forth below, we disagree and affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence shows that in March 2006, then seven-year-old S. A. and her family moved into a house in Whitfield County. S. A.'s mother, older brother, sister, and younger half-brother, C.

---

[1] See *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

A., lived in the home. Aburto and his brother, Cesar Aburto, who was C. A.'s father, lived there as well.

During an evening in July 2006, S. A. and her older brother were in their bedroom playing video games. Aburto knocked on the door and asked S. A. if she would help him find his watch. S. A. followed Aburto to his bedroom, where he pulled her onto the bed, tried to force her legs open, attempted without success to penetrate S. A.'s vagina with his penis, and then placed his penis in her mouth.

S. A. did not make an immediate outcry. Approximately four years following the incident, and after S. A. and her family had moved to Illinois, S. A. told a friend about the incident. Shortly thereafter, on June 24, 2010, S. A. disclosed to her mother and Cesar Aburto that Aburto had molested her when they were living in Georgia. S. A.'s mother reported the accusation to authorities in Illinois. Approximately a month later, S. A. and her mother traveled to Whitfield County, Georgia and met with a detective, who then arranged for a forensic interview with S. A.

Aburto was later indicted on charges of aggravated sodomy, two counts of aggravated child molestation, aggravated sexual battery, attempted rape, two counts of enticing a child for indecent purposes, and three counts of child molestation. The jury found Aburto guilty of child molestation (as a lesser included offense of one

count of aggravated child molestation), sexual battery (as a lesser included offense of aggravated sexual battery), and the other offenses as charged. After merging several counts, the trial court sentenced Aburto to 20 years, with 10 to serve.

1. Aburto filed pre-trial petitions under the Uniform Act to Secure the Attendance of Witnesses from Without the State[2] (the "Uniform Act") asking the trial court to certify that S. A.'s younger half-brother, C. A., and Dr. Abhilasha Jones, residents of the State of Illinois, were material witnesses in the case. The trial court determined that C. A. and Jones were not material witnesses and so declined to issue the certificates. Aburto claims that the trial court abused its discretion in so ruling. We disagree.

The Uniform Act creates a statutory framework for compelling an out-of-state witness to testify at, or to bring relevant documents to, a Georgia criminal proceeding.[3] Under the Uniform Act, a party seeking to secure the attendance of an out-of-state witness in a criminal prosecution pending in a Georgia court may request

---

[2] OCGA § 24-10-90 et seq. (2011). The provisions of former OCGA § 24-10-90 through OCGA § 24-10-97 are found at OCGA § 24-13-90 through OCGA §24-13-97.

[3] See *Young v. State*, 324 Ga. App. 127, 128-129 (1) (749 SE2d 423) (2013).

that the Georgia court issue a certificate of materiality regarding the witness.[4] In such event, "the Georgia trial judge presented with a request for a certificate is charged with deciding whether the sought-after witness is a 'material witness.'"[5] And a "material witness" for this purpose is "a witness who can testify about matters having some logical connection with the consequential facts, esp[ecially] if few others, if any, know about these matters."[6] We review the trial court's ruling on a motion under the Uniform Act for abuse of discretion.[7]

In this case, Aburto argued at the petition hearing that S. A. and her mother had fabricated the allegations against him because S. A. herself had been previously accused of molesting C. A. The trial court confirmed with defense counsel that "[t]he sequence is your alleged basis of causal connection." According to Aburto, the

---

[4] See OCGA § 24-10-94 (a) (2011); *Young*, supra at 129 (1).

[5] *Davenport v. State*, 289 Ga. 399, 402 (711 SE2d 699) (2011). After the Georgia court issues the certificate requesting the out-of-state court to order the out-of-state witness to attend and testify at the Georgia criminal proceeding, "the out-of-state judge . . . must [then] decide whether the sought-after witness is necessary and material." Id. See § 725 ILCS 220/2 ("If at a hearing the judge determines that the witness is material and necessary . . . he shall issue a summons . . . directing the witness to attend and testify in the court where the prosecution is pending.").

[6] *Davenport*, supra at 403 (citations and punctuation omitted).

[7] See *Spann v. State*, 318 Ga. App. 740, 742 (1) (736 SE2d 749) (2012).

4

defense would submit to the jury that S. A.'s mother "became angry at [Aburto's mother] for accusing [S. A.] of molesting [C. A.], and in retaliation, almost immediately, within a day or two, [S. A.'s mother] called the police to then accuse [Aburto]."

Aburto maintained that he needed the testimony of C. A. and Jones to show that S. A. had been accused of molesting C. A. In support of this proposition, Aburto attached to his petition copies of medical records reflecting Jones's examination of C. A., which records he further requested be produced at trial. Aburto did not call any witnesses or introduce any evidence at the hearing.

For purposes of Aburto's theory of the defense, as presented at the petition hearing, it was consequential to his case if the allegation that S. A. molested her brother preceded the allegation that Aburto molested S. A. The state was willing to concede for purposes of the hearing that S. A. had molested her brother, but Aburto did not show that such an act, in and of itself, was a consequential fact.[8] Nor did Aburto show that C. A. or Jones had any personal knowledge of when the allegation

---

[8] Introduction of evidence for the sole purpose of showing that S. A. had molested C. A. was unlikely to be relevant or admissible. See, e.g., *Bentley v. State*, 277 Ga. App. 483, 484 (627 SE2d 61) (2006) (the trial court did not err in excluding evidence that the child victim had threatened to blow up his school because, among other things, a victim's character is rarely relevant for any purpose in a criminal trial).

5

against S. A. was first communicated to S. A. or S. A.'s mother.[9] Pretermitting whether they were hearsay, the medical records indicate that Jones could confirm that C. A. was treated at a hospital on June 25, 2010. The state, on the other hand, argued that an Illinois police report would show that the allegation against Aburto was made on June 24, 2010, before C. A. was taken to the hospital, and Aburto's counsel acknowledged that the police report "may suggest that this allegation against [Aburto] occurred on June 24th."

Under the circumstances, the trial court could conclude that Aburto failed to come forward with evidence showing that C. A. and Jones would be material witnesses at the criminal trial,[10] and we find no abuse of discretion in its denial of Aburto's petitions for certificates of materiality.

---

[9] Aburto did proffer through argument of counsel that Aburto's mother "would state that that outcry [against S. A.] . . . came before the allegation regarding [Aburto]," but, even assuming that this might have otherwise impacted the materiality of C. A.'s and Dr. Jones's testimony, the trial court was not required to accept counsel's representation as evidence for purposes of the proceeding. See *Parker v. State*, __ Ga. App. __, __ (1) (Case No. A13A2100, decided March 13, 2014) (rejecting appellant's argument that a proffer of hearsay exhibits should be sufficient to establish the materiality of a witness in a hearing seeking a certificate of materiality to secure the attendance of an out-of-state witness).

[10] See id. (as defendant did not come forward with admissible evidence in support of his motion seeking a certificate of materiality, the trial court did not err in denying the motion).

2. Aburto asserts that the trial court violated OCGA § 17-8-57[11] when, after defense counsel asked S. A.'s older brother, "do you recall telling [the detective] that [S. A.] had been accused of molesting [C. A.]?," the state objected to the question as improper and the trial court, before sustaining the objection, commented to defense counsel:

> [W]hat relevance does it have as to whether or not he has told somebody else about something conclusory? That's what you are asking. You are not asking about his knowledge about anything and it hasn't been established it has any relevance to the case. It's an improper question.

---

[11] OCGA § 17-8-57 provides:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

"The rule set forth in OCGA § 17-8-57 does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence."[12] In this case, the trial court's comment to defense counsel expressed the court's concerns about the relevancy of conclusory statements by S. A.'s brother to a detective and thereby explained its reasons for subsequently sustaining the state's objection.[13] In the context in which they were made, the trial court's comments did not, as Aburto suggests, express or intimate to the jury that the subject matter of the alleged assault of C. A. was irrelevant. In any event, because the trial court did not express or intimate an opinion as to what had been proven or Aburto's guilt, the trial court did not err.[14]

3. Last, Aburto claims that his trial counsel rendered ineffective assistance by (i) failing to move to excuse an unqualified juror for cause, and (ii) failing to impeach

---

[12] *Paslay v. State*, 285 Ga. 616, 618 (3) (680 SE2d 853) (2009) (citations and punctuation omitted).

[13] See *Smith v. State*, 292 Ga. 588, 590 (740 SE2d 129) (2013) (finding that "[w]hile a court may not express an opinion as to what has or has not been proven, remarks made by the court regarding the admissibility of evidence or explaining the court's rulings are not such a comment or opinion") (citation and punctuation omitted).

[14] See *Paslay*, supra (finding that a trial court's comment as to "the relevance of the testimony at issue" was not an opinion as to what had been proven or the guilt of the accused).

S. A.'s mother with a felony conviction. To succeed on this claim, Aburto was required to show both that his trial counsel was professionally deficient and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.[15] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[16]

(a) During voir dire, and in response to defense counsel's general inquiry as to whether anyone on the panel had been affected by child abuse, prospective juror M. Q. disclosed that a family member had been sexually abused. When counsel asked if she could put aside her personal feelings, M. Q. responded, "Well, being honest, I wouldn't know," and that "I don't think I would be able to, because I mean, it's still affecting–." The trial court interjected that he could not hear all that the prospective juror was saying. He then gave an instruction directed to all the prospective jurors emphasizing that every juror must be able to decide the case based on the evidence. The trial court then asked M. Q., "would you be able to decide the case regardless of

---

[15] See *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010).

[16] *Baker v. State*, 293 Ga. 811, 815 (3) (750 SE2d 137) (2013) (citation and punctuation omitted).

what kind of past experience you've had, decide the case based on the evidence that's submitted here in court?" M. Q. answered, "Yes, I would." Defense counsel then proceeded to pose other questions to the panel. Defense counsel did not move to strike M. Q. for cause and later used a peremptory strike to exclude M. Q. from the jury.

Aburto contends that his trial counsel was professionally deficient because she failed to move to strike M. Q. for cause and that he was prejudiced by his counsel's error.[17] Aburto's trial counsel testified at the motion for new trial hearing that she did not move to excuse M. Q. for cause because she had believed that the motion would have been rejected by the trial court. Aburto maintains that a motion to excuse the juror would nevertheless have had merit.

Before a potential juror may be disqualified for cause, the challenger must establish that the potential juror's opinion "is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the

---

[17] See, e.g., *Sealey v. State*, 277 Ga. 617, 620 (7) (593 SE2d 335) (2004) (finding that "[a] defendant is entitled to a full panel of qualified jurors from which the jury will be selected by the use of peremptory strikes").

court's charge upon the evidence."[18] Further, "[a] trial court is not required to strike for cause a potential juror who simply questions his or her impartiality or expresses reservations about his or her ability to set aside personal experiences."[19] Although in her initial answers M. Q. expressed doubt about her ability to set aside her personal experiences, she did not express an unequivocal inability to be fair, nor was she subjected to repeated questioning until she made a desired response.[20] The trial court's subsequent inquiry also demonstrated that M. Q.'s bias was not so fixed as to warrant her disqualification.[21] Accordingly, Aburto does not show that a motion to

---

[18] *Mosely v. State*, 269 Ga. 17, 19 (2) (495 SE2d 9) (1998) (citation and punctuation omitted); see OCGA § 15-12-164 (d).

[19] *Clark v. State*, 265 Ga. App. 112, 114-115 (593 SE2d 28) (2003) (citations and punctuation omitted).

[20] Compare *Foster v. State*, 258 Ga. App. 601, 608 (3) (574 SE2d 843) (2002) (court's and prosecutor's repeated questioning of prospective juror was "more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality") (footnote omitted); *Ivey v. State*, 258 Ga. App. 587, 592 (574 SE2d 663) (2002) (where prospective juror "answered at least four times that she had already formed an opinion about [defendant's] guilt or innocence and that her experience would not permit her to be impartial in this case" and abandoned her answers only after repeatedly being confronted with variations of the rehabilitation question, trial court erred in failing to excuse the juror for cause).

[21] See *Clark*, supra at 116 (finding that trial court's questioning merely confirmed that prospective jurors' biases or opinions were not so fixed as to warrant disqualification).

excuse prospective juror M. Q. for cause would have had merit. And "[f]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance."[22]

(b) During her pre-trial investigation, Aburto's trial counsel determined that S. A.'s mother had been convicted of shoplifting in Illinois.[23] Under former OCGA § 24-9-84.1 (a) (1) (2011) , which applied when this case was tried, the admissibility of a conviction for purposes of impeachment depended on, among other things,[24] whether "the crime was punishable by death or imprisonment of one year or more under the law under which the witness was convicted." Applying that standard, competent evidence of the Illinois conviction would have likely been admitted to impeach S.

---

[22] *Hall v. State*, 292 Ga. App. 544, 553 (6) (a) (664 SE2d 882) (2008) (citation omitted).

[23] Trial counsel's pretrial investigation showed that S. A.'s mother had pled guilty to violating § 720 ILCS 5/16A-3 (2006) by taking possession of clothing offered for sale in a retail mercantile establishment having a total value in excess of $150.00, with the intent of depriving the merchant permanently of the benefit of the merchandise without paying the full retail value of the merchandise.

[24] The trial court was also required to determine "that the probative value of admitting the evidence outweighs its prejudicial effect to the witness." OCGA § 24-9-84.1 (2011).

A.'s mother had Aburto's trial counsel determined to use it for such purpose.[25] Aburto's counsel nevertheless failed to take any steps to obtain a certified copy of the Illinois conviction and did not attempt to use the conviction to impeach S. A.'s mother at trial.

Aburto contends that his trial counsel's failure to impeach S. A.'s mother with the Illinois conviction was professionally deficient and that he was prejudiced thereby. More specifically, he posits that had S. A.'s mother been impeached with a felony conviction his trial counsel could have then requested a charge that would have authorized the jury to disregard S. A.'s mother's testimony.

The trial court found, and we agree, that if Aburto's trial counsel was deficient in failing to impeach S. A.'s mother with the Illinois conviction, Aburto was nevertheless not prejudiced thereby. Consistent with a strategy of showing ongoing difficulties between S. A.'s mother and Aburto's family, defense counsel established at trial that S. A.'s mother had pled guilty to a charge of criminal damage to property

---

[25] The crime of retail theft of property, the retail value of which exceeds $150, is a Class 3 felony for purposes of Illinois law. See § 720 ILCS 5/16A-10 (3) (2006); § 730 ILCS 5/5-8-1 (6) (2006) (providing for sentence of imprisonment of not less than two and not more than five years for a Class 3 felony).

in the second degree following an incident which involved Cesar Aburto.[26] If the jury

had also been made aware that S. A.'s mother had been convicted of shoplifting, that

would not likely have made a significant difference in the jury's assessment of her

credibility.[27]

Furthermore, the copy of the Illinois conviction which Aburto introduced at the

new trial motion hearing was not a certified copy of that conviction,[28] which would

---

[26] S. A.'s mother also admitted to being arrested and charged with the crimes of criminal damages to property in the second degree, simple battery, and cruelty to children in the third degree in another incident where Cesar Aburto was listed as a victim, and she was questioned as to the details of that incident. For purposes of this appeal, Aburto admits in his brief that "it is true, as the trial court pointed out, . . . that the jury was made aware of [S. A.'s mother's] criminal proclivities."

[27] See *Taylor v. State*, 301 Ga. App. 104, 106 (686 SE2d 870) (2009) (as the jury was aware of witness's recent criminal propensities, it was not reasonably probable that counsel's failure to introduce prior convictions would have altered the outcome of the proceedings); *Buchanan v. State*, 273 Ga. App. 174, 181-182 (5) (614 SE2d 786) (2005) (finding that defendant was not prejudiced by counsel's failure to impeach a witness with prior convictions as "the jury had already heard evidence of [the witness's] disreputable character"); *Ross v. State*, 231 Ga. App. 793, 798 (6) (499 SE2d 642) (1998) (concluding that defendant was not prejudiced by his counsel's failure to further impeach witness with certified copies of witness's felony convictions).

[28] The state objected to the admission of the copy of the Illinois conviction at the new trial motion hearing because it was not a certified copy of that conviction. Aburto then asked that the copy be admitted to show that defense counsel was put on notice of the conviction. The trial court admitted the document for that purpose.

14

have been required to impeach a witness at the time of Aburto's trial unless the opposing party did not object and the witness admitted the conviction.[29] Accordingly, Aburto "did not introduce [a] certified cop[y] of the prior conviction[] that he claims trial counsel should have obtained and used to impeach" S. A.'s mother, thereby failing to "satisfy his burden of showing ineffective assistance in this respect."[30]

In light of the foregoing, the trial court did not err in rejecting Aburto's claim that he received ineffective assistance of trial counsel.

*Judgment affirmed. Ellington, P. J., concurs. McMillian, J., concurs in Divisions 2 and 3, and concurs in judgment only as to Division 1.*

---

[29] See *Wallace v. State*, 294 Ga. 257, 259 (3) (a) (754 SE2d 5) (2013).

[30] Id. (claim of ineffective assistance failed where appellant did not introduce certified copies of the prior convictions that he claims trial counsel should have obtained to impeach the witness) (citations omitted). See *Baskin v. State*, 267 Ga. App. 711, 714 (1) (b) (600 SE2d 599) (2004) (finding that appellant's failure to produce certified copies of prior convictions which appellant contended trial counsel should have used for impeachment precluded a showing that appellant was prejudiced by trial counsel's alleged deficiencies).